## TOPLIFF *v.* TOPLIFF.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Argued May 3, 4, 1887. — Decided May 23, 1887.

When the language of a contract is ambiguous, the practical interpretation of it by the parties is entitled to great, if not controlling influence.

In this case the court holds that a contract made by the parties in 1870 is still in force, and that under its terms the appellee is entitled to make use of the combinations covered by the patent to John A. Topliff, one of the appellants, of August 24, 1875, without the payment of royalty, and without being charged with liability as an infringer.

BILL in equity to restrain alleged infringements of letters-patent. Decree dismissing the bill, from which complainants appealed. The case is stated in the opinion of the court.

*Mr. Henry S. Sherman* and *Mr. W. Bakewell* for appellants.

*Mr. M. D. Leggett* and *Mr. W. W. Boynton* for appellee. *Mr. S. Burke* was with them on the brief.

MR. JUSTICE MATTHEWS delivered the opinion of .the court.

The appellants, complainants below, on the 28th February, 1880, filed their bill in equity to restrain the alleged infringement by the defendant of letters-patent No. 166,950, granted August 24, 1875, to John A. Topliff, for a new and useful improvement in bow-sockets for buggy-tops.' As stated in the specification, "This invention has relation to, bow-sockets for buggy-tops, and consists in placing a filling of wood in the tubes of the bow-sockets to strengthen the same; also in extending the strip of steel which is inserted in the wood filling far enough down to enable it to be welded or otherwise fastened to the slat-iron."

Among other grounds of defence, the defendant in his answer sets out the following: He alleges that some time prior to the 27th day of December, 1870, he invented a new and useful invention denominated an improvement in carriage-bows, consisting in the main in constructing the straight part of carriage-bows out of tapering tubes made of sheet-iron with soldered seams and lower ends flattened, forming a part of the hinge, in conjunction with the bows made of wood, shaped and fitted into the upper ends of the tubes; that this invention was secured to him by letters-patent dated December 27, 1870, No. 110,513; that this patent was reissued as reissued letters patent No. 9026, January 6, 1880; and that he obtained another patent, No. 114,885, dated May 16, 1871, for a new and improved carriage-bow cover and slat-iron combined. That soon after he invented his first improvement in carriage-bows, for which he obtained the patent dated December 27, 1870, and pending the application therefor, a contract in writing was entered into on or about the 1st day of September, 1870, between himself and the complainants, as follows:

"This agreement, made and concluded this —— day of —— A.D. 1870, by and between Isaac N. Topliff, of the first part, and John A. Topliff and George H. Ely, of the second part, witnesseth: 1st. The said party of the first part is the sole owner of a certain patent for tubular iron bows used

in manufacturing carriage and buggy tops, which patent was issued the —— day of, A.D. ——. Now, in consideration of the agreements of said party of the second part to be by them performed, the said party of the first part hereby gives, grants, sells and conveys to the said party of the second part, the exclusive right of manufacturing and of selling the above-mentioned article throughout the United States for five years from the date of this agreement; it being understood that, at the expiration of five years, the said party of the first part shall have the right to have the above-named articles manufactured at not more than two other places, to be sold at prices adopted by said party of the second part, but in all other respects the rights and privileges of the said party of the second part shall continue during the entire life of the patent.

" 2. The parties mutually agree that they will share the expense of maintaining the right of the patent against infringements and other patents in the following proportion: The first party to pay one-third and the second party to pay two-thirds. It is also further agreed that any improvement made on these articles by either party shall be for the mutual benefit of the parties.

" 3. In consideration of the above grant, the said party of the second part hereby agrees to pay to the said party of first part fifteen per cent on the wholesale selling prices of above-named articles as royalty on all sold by them, it being understood that these prices shall at all times be settled by mutual agreement between both parties. The said party of the second part further agree that they will advertise thoroughly the above-named article in such ways as may seem best, and do all in their power to introduce and extend the sale of said articles. They also agree that they will make them of quality and finish to meet the approbation of said party of the first part.

" In witness whereof the parties have set their hands and seals to duplicates the day and year first above written.

"I. N. TOPLIFF.    [SEAL.]

"J. A. TOPLIFF.    [SEAL.]

"GEORGE H. ELY.    [SEAL.]"

That, in pursuance of the agreement, the complainants entered upon the manufacture and sale of carriage-bows, the defendant being in their employment as travelling salesman, and as such devoted his time largely to the introduction and sale of said carriage-bows throughout the United States, and also his time, thought, and attention to making improvements therein, knowledge of which was communicated by him to the complainants from time to time. That some of these improvements made by him were covered by the patent bearing date May 16, 1871. That the business was carried on by the complainants in this way under said contract for more than eight years to their great gain and profit.

The defendant further alleges, that "after the issuing to him of the last-mentioned letters-patent, he made some slight changes and improvements in the manufacture of carriage-bows, and communicated the same to said complainants, especially to said John, and requested that, in the manufacture of carriage-bows under his patent aforesaid, that the said complainants should construct and manufacture them in accordance with his said suggestions and improvements, which improvements were communicated by this defendant to the said complainants on or about the first day of June, 1873. That thereupon his said suggestion and invention was adopted by the said complainants in the manufacture of carriage-bows by the said complainants; and afterwards the said John A. Topliff, for the purpose of securing the same to the complainants and to this defendant for their mutual use and benefit, in accordance with the terms of said contract, made application for a patent thereon, and secured the alleged patent in the complainants' bill of complaint described. And this defendant alleges and says, that, if in reality there is anything new or useful embraced in the said letters-patent, issued to the said John A. Topliff, that he was and is the true inventor and rightful owner thereof, and that the said John A. Topliff was not and is not the true and original inventor and discoverer thereof. And this defendant alleges, that, whether said patent, so issued in the name of said complainants, is or is not valid, that he, by the terms of his said contract entered into

with said complainants, is entitled to use the same to the same extent that the complainants are entitled to use the same. That, by the terms of said contract, such right is expressly granted and conveyed to him, and that the complainants have so interpreted said contract, and have had upon their part the free use and benefit of the invention, discovery, and improvement made by this defendant and secured to him by letters-patent dated May 16, 1871, as aforesaid, and other considerations therefor, as agreed; and that, relying upon said contract, he communicated to the said complainants the information and instructions in regard to manufacturing under his said patents and other improvements above named, upon which the said John A. Topliff made the application and secured to the said complainants the letters-patent said to be owned by them. And this defendant denies that he has made other use of the letters-patent issued to the complainants than such as he was authorized to make by the terms of the contract aforesaid between the complainants and himself."

The defendant further says, that he has established a manufactory of carriage-bows in the city of Cleveland, but not in any other place or places; and that by the terms of his contract with the complainants he is entitled so to do, and in said business to use the alleged improvements covered by the patent described in the bill.

The case was heard on the pleadings and proofs, when the Circuit Court being satisfied that under the contract set up in the answer each party had a right to use, without the payment of royalty, the patent issued to the complainants, a decree was entered dismissing the bill. The complainants took the present appeal.

It is now contended, on the part of the appellants, 1st, that at the time when the bill was filed the contract set up in the answer was not in force, having been previously rescinded by the parties; and, 2d, that if the contract is in force, it does not secure to the appellee the right to the use of the improvement covered by the patent to John A. Topliff of August 24, 1875, belonging to the appellants.

The circumstances which, according to the contention of

the appellants, constitute the rescission of, the contract are claimed to be as follows:

They allege that when the contract in question was entered into, the application of the appellee for his patent was pending; that a sample specimen of the carriage-bow intended to be covered by the patent was shown by the appellee to the appellants; that the appellee represented to them that the patent would cover the use of tubular carriage-bows; that in point of fact the original application made the following claims:

"1. The upright part of carriage-bows, constructed of tubular sheet metal A, in combination with the wooden bow B, put together in the manner and for the purposes set forth and described.

"2. The tube A, with elongated flat portion $c$, to form a solid joint with the bow-socket D in the manner described.

"3. The scallop-edged sheet-iron bow-socket D to be used in connection with the tubes A and A', in the manner described."

That these claims were rejected in the Patent Office, and in lieu of them the claim of the patent as issued on December 27, 1870, was substituted, as follows:

"The straight part of the bow A; tubular and flattened at the lower end, the bow-socket D, consisting of two concave scalloped pieces, and the bent part of the bow B, all combined, constructed, and arranged as and for the purposes set forth."

That the appellants were not aware of the rejection of the original claims until some time in the year 1879; that during that period they acted under the impression that they were secured in the exclusive-right to use carriage-bows containing the tubular uprights; that they had no knowledge to the contrary until the fact was disclosed by an examination of the records of the Patent Office; that immediately upon discovering it they gave notice to the appellee that the consideration for the contract between them had thus failed, the patent being of no avail to them, and that they would no longer regard it as obligatory, and that thereupon the appellee acquiesced in this rescission of the contract by them, and resumed his ownership of the original patent, surrendered the same, and obtained a reissue thereof on January 6, 1880, the claims of which are as follows:

"1. A carriage-bow, the side or upright portions A A of which are tubular, substantially as and for the purpose shown.

"2. A carriage-bow consisting of the bent wooden section B and the tubular sections A A, the latter constituting the vertical sides or arms of the bow, the opposite ends of the bent portion B being secured to the upper ends of the tubular sections A A, substantially as set forth.

"3. A carriage-bow consisting of the bent wooden sections B and the metallic tubular sections A A, the latter constituting the straight or vertical sides of the bow, substantially as set forth.

"4. A carriage-bow consisting of the bent wooden section B and the tubular sections A A, the latter constituting the straight or vertical sides of the bow, and constructed at their lower ends to be attached to a socket or carriage-seat, substantially as set forth."

On the other hand, it appears from the testimony in the case, that the manufacture of the carriage-bows, as contemplated under the application for the original patent, was abandoned by the parties before the patent was in fact issued, experience showing that the bows so made were not practically useful in the trade; that the original patent of December 27, 1870, soon after it was issued, was delivered to the appellants, and kept in their possession until it was lost or destroyed in December, 1873, and that thereby they had abundant opportunity of knowing, from an examination of its contents, the actual extent of its claims; and that subsequently the patent of May 16, 1871, was issued to the appellee for a new and improved carriage-bow cover and slat-iron combined, which embodied important improvements on the carriage-bow as previously made.

Under this patent all the parties continued to carry on the business of making and selling carriage-bows, the articles of manufacture being from time to time improved and rendered more valuable and salable by the suggestion and adoption of improvements made from time to time by both parties. To cover some of the improvements thus invented and adopted, the appellant, John A. Topliff, applied for and obtained his

patent of August 24, 1875. The claims of that patent are as follows:

"1. In combination with the back tubes of bow-sockets and wood bows or fillings, a steel or other hard-metal plate, welded or otherwise fastened within the tube to the slat-iron, substantially as and for the purpose specified.

"2. The combination, with the metal tubes of bow-sockets, of a wooden filling, substantially as and for the purpose set forth."

John A. Topliff states, as a witness in the case, that his improvement consisted "in placing a filling of wood in the tubes of the bow-sockets to strengthen the same, and also in extending the strip of steel, which is inserted in the wood filling, far enough down to enable it to be welded or otherwise fastened to the slat-iron." After the issue of this patent, the business was continued by the parties as before, the carriage-bows and bow-sockets being made with all the improvements added; the appellants continuing regularly to account to the appellee, according to the terms of the contract between them, for his share of the proceeds of the sales of the manufactured articles, being fifteen per cent of the wholesale selling prices of all actually sold. These sums amounted in the aggregate to $40,000 or $50,000, and the payments were made regularly until in August or September, 1879.

In reference to John A. Topliff's patent of August 24, 1875, the appellee claimed that the idea of a wooden filling in the tubes of the bow-sockets was suggested by him, and that of welding the steel plate to the slat-iron was suggested by his brother. On that point he says in his testimony:

"Some time in 1874 or 1875, I think it was, I came home, and my brother said that they had concluded to patent that device of welding the steel to the slat-iron, and he said that he thought that they had better take out a patent or make one claim for the filling also. I told him that the filling, of course, was my improvement, and I did not know that it would be right to insert it into his patent. He said it would make no difference, as our contract would cover it all. He said that it would make no difference which took out the patent, whether

it was in his name or my name, and I made no further objection to it; but I always claimed, and he never disputed it at that time, that the device was mine as far as the filling was concerned."

This statement of the appellee as a witness is not contradicted by the testimony of either John A. Topliff or George H. Ely, the appellants, the only other witnesses examined in the cause.

In 1879 the appellee left the employment of the appellants, and made preparations to establish a business of his own in the manufacture of carriage-bows and bow-sockets in Cleveland, claiming the right to do so under the terms of his contract, when the present controversy arose between them. In explanation of their continuing to pay royalty under the contract as late as in 1879, John A. Topliff states in his testimony, as follows :

" We paid royalty from the fact that we supposed that we were working under his original patent; we did not know to the contrary. The original patent was somewhere, perhaps, in our office, and was burned up in 1873, I think, — I think that was the time of the fire, — and we had not seen it for a long time, and supposed that we were working under the original patent until we finally received the file-wrappers from Washington, informing us to the contrary, and when we received them, together with the patent, we found out that we were not working under his patent and refused to pay further royalty."

This explanation cannot be accepted. It is inconsistent with the facts testified to by the same witness, as well as others, that the manufacture of the bows and bow-sockets under the original patent ceased early in 1870, before, in fact, that patent was issued; and that the business was actually carried on under Isaac N. Topliff's patent of May 16, 1871, and the subsequent improvements patented to John A. Topliff under the patent of August 24, 1875. The fact, therefore, that the patent of December 27, 1870, was of no practical value in the business was well known and perfectly understood from a very early period in its prosecution, and the patent of May 16,

1871, was accepted by the parties as a substitute for it. The appellants, therefore, cannot claim that they made the first discovery of its inutility in 1879, and had a right by reason thereof to rescind the contract for a failure of consideration. It was equally immaterial that Isaac N. Topliff subsequently thereto, in 1880, surrendered that patent, and obtained the reissue. If the reissue is void, the situation of the parties is not changed; if it is valid and useful, it inures to the benefit of the appellants as well as to that of the appellee by virtue of the express terms of the agreement between them.

The second proposition of the appellants is, that if the contract set up in the answer is in force, it does not secure to the appellee the right to the use of the improvement covered by the patent sued on. The language of the agreement is this: "It is also further agreed that any improvement made on these articles by either party shall be for the mutual benefit of the parties."

It is contended by the appellants that the articles referred to in this clause of the contract are those mentioned in the former part of the agreement as meaning articles to be manufactured under the original patent of Isaac N. Topliff of December 27, 1870, and that the improvement which is to inure, by virtue of the clause quoted, to the mutual benefit of the parties, must be an improvement upon the patented article. This, however, it seems to us, is too narrow and restricted a meaning to be placed on the language of the parties, and fails to secure their actual intention. The subject of the contract is the manufacture and sale of bows and bow-sockets for carriage and buggy tops, in which the parties were to have mutual interests, as defined in the contract. It was supposed, and this undoubtedly was the original basis of the agreement, that the appellee had secured the exclusive right to a valuable improvement in the manufacture of this description of articles. His application for the patent was then pending; the patent was in fact subsequently issued. In the meantime the article as proposed was manufactured and put on sale, and ascertained by experience not sufficiently to answer the purpose. By mutual suggestion and assent improvements in the manufacture were

adopted, and some of them embraced in the second patent to the appellee of May 16, 1871. The article made under that patent was treated as the article intended by the contract. Other improvements were subsequently devised and adopted for perfecting the same article, and these were embraced in the patent to John A. Topliff of August 24, 1875. The operations of the parties in the manufacture and sale of the article were carried on, and continued to enlarge and prosper, and became profitable; and the parties throughout acted upon the assumption and understanding that the article thus manufactured was the article contemplated by the contract between them. If there were any doubt or ambiguity arising upon the words employed in the clause of the contract under consideration, they would be effectually removed by this practical construction continuously put upon them by the conduct of the parties for so long a period.

"In cases where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation of the parties themselves is entitled to great, if not controlling, influence. The interest of each generally leads him to a construction most favorable to himself, and when the difference has become serious and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one." *Chicago* v. *Sheldon*, 9 Wall. 50, 54, *per* Mr. Justice Nelson.

In our opinion, the contract between the parties set up in the answer continued in force, notwithstanding what was done by the appellants in 1879 with the intention to put an end to it; and, by virtue of its terms, the appellee is entitled to manufacture, in Cleveland, carriage-bows and bow-sockets, using therein the combinations covered by the patent to John A. Topliff of August 24, 1875, without royalty, and without being charged with liability as an infringer.

The decree of the Circuit Court in dismissing the bill, which is its whole legal effect, was therefore right, and is hereby

*Affirmed.*