## WEAGANT v. BOWERS.

### No. 277.

Circuit Court of Appeals, Second Circuit.

April 11, 1932.

George Z. Medalie, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Adrian C. Humphreys and Robert N. Anderson, both of Washington, D. C., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff sued to recover sums paid by him as additional income taxes for the years 1917 and 1919 in the amounts of $6,042.77 and $3,072.09, respectively. The additional assessments resulted from the inclusion by the Commissioner of Internal Revenue in the taxpayer's gross income, of $33,333.33 received by him in the former year, and $16,666.66 in the latter year, from Marconi Wireless Company of America, by whom he was employed. The taxpayer contends that these payments were gifts; the defendant that they were taxable income within the meaning of the Revenue Acts of 1917 and 1918 (40 Stat. 300, 1057). A jury having been waived by

written stipulation, the case was tried to the court, who made findings of fact upon which he held that the plaintiff was entitled to recover. Judgment was entered accordingly.

This case was formerly before us in Weagant v. Bowers, 24 F.(2d) 362, where we affirmed a judgment holding the complaint insufficient, but gave the plaintiff leave to file an amendment. This he did, and the appellant now challenges the amended complaint as being not materially different from the one held insufficient on the prior appeal. As to this it will suffice to say that we think the amended complaint alleges with adequate certainty facts which we said in our former opinion might, if properly proved, show a cause of action. The complaint now alleges that the instrument of October 3, 1917, though in form a contract, was a sham and never intended by the parties to be a contract; also facts to show the plaintiff gave no consideration for it.

█ The next contention of appellant is that the court's findings that the instrument of October 3, 1917, was a memorial of a gift, that the plaintiff gave no consideration for it, and that the payments in question were gifts instead of taxable income are wholly without support in the evidence. But before turning to the evidence we will consider the plaintiff's argument that in any event the 1917 tax was illegally collected because barred by the statute of limitations set up in section 250 (d) of the Revenue Act of 1921 (42 Stat. 227, 264, 265). The taxpayer's 1917 return was filed March 29, 1918; the additional tax for that year was assessed February 26, 1923, and was paid to the collector on April 26, 1923. Thus, although the assessment was made within five years after the date when the return was filed, the payment was made nearly thirty days after the expiration of the five-year period. This was too late for the government to begin a suit or "proceeding" for collection of the 1917 tax. Bowers v. N. Y. & Albany Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676. We may assume that the tax was paid to avoid distraint, as the complaint alleges, although the stipulation of facts admits only the fact of payment, and was illegally collected. See Bonwit Teller & Co. v. United States, 283 U. S. 258, 259, 51 S. Ct. 395, 75 L. Ed. 1018. But granting this, the question is of the plaintiff's right to recover it when his claim for refund neither asserted as a ground that the tax was collected more than five years after the return was filed nor alleged facts showing this to be the case. Rev. St. § 3226 (26 USCA § 156) requires a claim for refund to be made in accordance with the regulations, and these required that all facts relied upon should be clearly set forth. Art. 1036, Reg. 62; Art. 1306, Reg. 65. The plaintiff filed two claims for refund of the 1917 tax, but each relied solely upon the ground that the disputed item of income was a gift. Neither claim disclosed the date when the taxpayer's return was filed and therefore did not set forth all the facts necessary to show that the tax was collected too late. Consequently the point is not now available to the plaintiff. Connell v. Hopkins, 43 F.(2d) 773 (D. C. N. D. Tex.), is squarely in point, and cases too numerous for complete citation have recognized the principle that a taxpayer who brings suit after a refund has been denied can rely for recovery only on grounds presented to the commissioner. See United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 272, 51 S. Ct. 376, 75 L. Ed. 1025; J. P. Stevens Engraving Co. v. United States, 53 F.(2d) 1 (C. C. A. 5); Lewis A. Crossett Co. v. United States, 50 F.(2d) 292 (Ct. Cl.); Tucker v. Alexander, 15 F.(2d) 356 (C. C. A. 8), reversed on another ground in 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253.

█ We now return to appellant's contention that the proof will not support the court's finding of a gift. Weagant was employed by the Marconi Company as an assistant engineer, his duties including work of research and experiment. On February 5, 1914, in consideration of the continuance of his employment he signed a contract by which he agreed that on making any discovery or invention relating to his employer's business, he would disclose the same to his employer, "which said discovery or invention (even should the employee fail to disclose the same) shall become and be the property of the Company at the time of such discovery or invention, for which patent or patents may be taken out by it or not and in the name of the employee or its own name at the option of the company." The contract also provided that he should execute all such papers, without remuneration other than his regular salary, as may be deemed necessary "to absolutely and fully vest the discovery or invention and the patent in the Company." In 1917 Weagant made new and useful improvements in the art of wireless telegraphy and telephony, and applied for two United States patents covering the same. By two assignments referring respectively to his patent applications, he assigned to the Marconi Company "the full and exclusive right to the said invention, as fully set forth and described in the specification

accompanying the aforesaid application," and requested that the patent be issued to the company. Subsequently, the instrument of October 3, 1917, was executed by Weagant and the company. The execution of this instrument was authorized at a meeting of the executive committee, held on the same date, by a resolution reading as follows:

"Contract drawn and prepared by Messrs. Sheffield and Betts regarding patents of Mr. Weagant was submitted and read to the meeting. After due consideration thereof, on motion duly made and seconded it was

"Resolved, that the contract with Roy A. Weagant regarding patent on his most recent invention as presented to the meeting is hereby ratified, approved and confirmed and the officers of the Company are hereby authorized and empowered to execute with the seal of the Company said contract."

The instrument executed pursuant to this resolution is headed "Agreement made and entered into this 3rd day of October 1917." It recites Weagant's two 1917 applications for United States letters patent and his assignment of his interest in said applications. It also recites that "the Company is desirous of acquiring from the said Weagant the whole right, title and interest in and to the said inventions for all countries foreign to the United States, and in and to all inventions which the said Weagant has made or may hereafter make as improvements upon the same in all countries foreign to the United States." Then follow the mutual promises: Weagant sells, assigns, and transfers to the company the whole right, title, and interest in said inventions and in and to all improvements which he has now made or which he may hereafter make on the same, and in and to all letters patent in all countries foreign to the United States for the said inventions or any improvements thereon; also he agrees that he will without further compensation do everything necessary to apply for patents in all foreign countries, the fees and incidental expenses being borne by the company. And the company agrees to pay to Weagant one-third of the net receipts or profits which it may thereafter obtain from the sale of any patents or applications for patents or patents granted in foreign countries for said inventions or any improvements thereon made by the said Weagant. Later in the year 1917 the company sold the patent rights in South American countries for $150,000, and paid to Weagant one-third thereof, $33,333.33 being paid in 1917 and $16,666.66 in 1919.

On its face the instrument of October 3, 1917, was a contract entered into by the company for the purpose of acquiring the patent rights in foreign countries on Weagant's said inventions. It certainly taxes credulity to believe that this formal document drawn up by the corporation's attorneys was all a sham, intended merely to evidence a benevolent intent to make Weagant a gift in the event that the foreign patent rights (assumed to have been already owned by the company under the contract of February 5, 1914) should subsequently be sold. This becomes all the more incredible when we look at the two subsequent contracts introduced as Defendant's Exhibits 1 and 2. The former is an agreement of July 25, 1919, which recites that the parties have heretofore entered into an agreement dated October 3, 1917, relating to the disposition of certain inventions made by Weagant, and that the company desires to acquire an option to purchase from Weagant all his rights under said contract. Weagant agrees to release his rights if on or before January 1, 1920, he shall be paid $100,000 cash, another $100,-000 of preferred stock in a prospective radio corporation, and a royalty agreement by the latter providing royalties running up to $300,-000. This option was not exercised. It was superseded by Defendant's Exhibit 2, dated January 2, 1920. This provided for the termination of Weagant's employment by the Marconi Company and his employment by the Radio Corporation of America, and for the release of all Weagant's contracts with the Marconi Company, specifying the contract of February 5, 1914, the contract of October 3, 1917, the contract of July 25, 1919, to all which we have already referred, and also another of April 3, 1913, which is not in the record. Weagant then, "with the consent of the Marconi Company," assigned to the Radio Corporation all inventions which he had made or which he may make while in the Radio Corporation's employ, and under the terms of the agreement was to receive $50,000 cash, and conditionally $200,000 more. To say that the parties meant the contract of October 3, 1917, to create no rights and understood that it did not, when they were subsequently offering Weagant such sums as these to get rid of it, is really unbelievable.

The only evidence which tends to support the findings below is a deposition of Weagant. In response to questions of his counsel, he expressed the opinion that the contract of February 5, 1914, obligated him to turn over to his employer his inventions, thus giving the Marconi Company foreign patent rights as well as patent rights in

the United States. Hence he always considered the contract of October 3, 1917, as expressing only a "moral obligation" of the company to carry out its benevolent intention to make him a gift on account of the value of his anti-static inventions. He also says that the vice president of the company, when handing him the instrument, declared that it was intended to be an "expression of appreciation" for his work and to constitute a memorandum which would be "morally binding" on future directors of the company. Such evidence, if competent at all, certainly cannot be allowed to outweigh the documentary proof. To us it seems clear that the parties thought the 1914 contract did not give the Marconi Company patent rights in foreign countries. It did not expressly mention foreign countries, and its language that Weagant's inventions shall become the company's is so tied up with references to obtaining patents that if the latter refer only to domestic patents, that limitation might reasonably be extended to cover the whole agreement. The parties have construed it that way. When there is ambiguity in the terms of a contract the practical construction which the parties have put upon it is entitled to great if not controlling influence. Topliff v. Topliff, 122 U. S. 121, 131, 7 S. Ct. 1057, 30 L. Ed. 1110. In the present case their interpretation should control and should preclude a court from reading the 1914 contract so as to make the 1917 contract a nudum pactum. The evidence will not justify the findings that the latter was without consideration and intended only as a memorial of a gift.

But even were it to be conceded that the company's promises contained in the writing of October 3, 1917, were without consideration because Weagant was already bound by the 1914 contract to turn over foreign as well as domestic patent rights, it need not follow that the payments made in 1917 and 1919 were proved to be nontaxable gifts. There is authority for the proposition that it is not enough to show that a payer was under no legal duty to pay and that "additional compensation" paid for past services may constitute taxable income. Noel v. Parrott, 15 F. (2d) 669, 671 (C. C. A. 4). This case was cited with approval in Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 730, 49 S. Ct. 499, 73 L. Ed. 918. See, also, Garey v. Commissioner, 16 B. T. A. 274; Binger v. Commissioner, 22 B. T. A. 111; Lunsford v. Commissioner, 22 B. T. A. 881. Compare Blair v. Rosseter, 33 F.(2d) 286 (C. C. A. 9).

These cases rest upon the view that an intention to make a gift must be established. In the case at bar there is no evidence that such was the intention of the Marconi Company. In fact, the form of the 1917 writing and the resolution of its executive committee are clear evidence to the contrary. And the subsequent agreements already referred to are equally persuasive evidence to the same effect. Moreover, the payments made to the plaintiff were treated by the company in its books as the cost of acquiring a capital asset.

Judgment reversed.