**FEUCHT et al. v. KELLER.**

No. 7144.

United States Court of Appeals for the District of Columbia.

Decided March 27, 1939.

---

5 31 Stat. 1340.

6 32 Stat. 537, D.C.Code 1929, T. 6, § 351.

7 44 Stat. 814.

8 46 Stat. 1427, 6 D.C.Code 1929 (Supp. III), 1937, § 243(i).

Charles V. Imlay and John R. Reed, both of Washington, D. C., for appellants.

Charles L. Frailey, Joseph FitzGerald, Jr., James A. Purcell, and Louis J. Fitz-Gerald, all of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and VINSON, Associate Justices.

EDGERTON, Associate Justice.

Plaintiffs, as liquidating trustees of the Fletcher American National Bank of Indianapolis, sued Keller as guarantor of a collateral trust note for $12,000 made by White's Restaurant Company, of Indianapolis, to the order of the bank. The District Court directed a verdict for the defendant on the ground that the suit was barred by the statute of limitations, and plaintiffs appeal.

In May, 1928, the restaurant owed the bank $12,000, represented by three notes endorsed by Keller. The bank and other creditors of the restaurant agreed to refund its obligations, and on October 11, 1928, a collateral trust agreement or indenture of trust, dated August 1, 1928, was executed by the bank as trustee and by the restaurant. The restaurant mortgaged its property and assigned its leases to the bank as trustee, and executed collateral trust notes secured by the trust agreement.

The trust agreement provided that in case of 30 days' default in any of certain periodic payments which the restaurant promised to make to the trustee for the benefit of the noteholders, the trustee might take possession of the mortgaged property, or sell it, and that "in the event of any such sale or proceeding, the proceeds therefrom shall be applied to the pro rata payment of the remaining unpaid principal and interest of the outstanding notes after first deducting all sums due the Trustee, including the Trustee's expense and cost of sale and all remainder, if any, shall be payable to the Company. In the event such sale or proceeding shall not yield proceeds sufficient to pay all said notes, interest and expenses in full, then the Company agrees to pay the deficit to the Trustee on demand." The collateral trust notes were made payable to their registered holders "on or before January 1st, 1934."

In October, 1928, the bank authenticated the notes as trustee and forwarded them to the creditors. The bank was a creditor as well as trustee. Its trust department had officers and records distinct from those of its credit department, and the bank as trustee handed to the bank as creditor a collateral trust note for $12,000. The credit department did not return a receipt to the trust department until the bank had demanded and obtained from Keller the separate guaranty now in suit. The other creditors of the restaurant got no such guaranty.

By the instrument in suit, defendant guaranteed to the extent of $12,000 all notes, etc., "that may have been or shall be discounted" by the bank for the restaurant. He agreed that if "any such debt is not paid at maturity * * * suit may be brought directly and immediately against the undersigned without first exhausting

the person or persons primarily liable therefor."

Because of unsuccessful business and a receivership suit, the restaurant on July 26, 1929, requested the bank as trustee to take over its assets in accordance with the trust agreement. The trustee did so. On December 13, 1929, it notified the restaurant that it elected to sell the assets on January 15, 1930. The bank's president forwarded the three original overdue notes to its attorney, for enforcement of defendant's guaranty, under the erroneous impression that they constituted the obligation to which the guaranty referred. On December 14, 1929, the bank's attorney made demand on defendant that he make good on his "suretyship agreement in the amount of $12,000.00 covering the promissory notes" and stated to him that: "As you undoubtedly know, the payments due under the trust agreement are all in default, and, therefore, the entire debt is now due and your suretyship has become an obligation calling for immediate payment." In January, 1930, the bank sold the restaurant's assets pursuant to the trust agreement and to the notice given in December, 1929. Nothing was realized for the restaurant's creditors, and the $12,000 due the bank as a creditor is still unpaid. The bank as trustee never made demand on the restaurant for payment of the "deficit" (100%) remaining due on the notes after the sale, because it knew the restaurant had no property and the demand would therefore be an idle gesture.

The present suit on Keller's guaranty was brought on August 3, 1935. The principal question is whether the right to maintain the action against Keller accrued, for the purposes of the three-year statute of limitations,[1] before or after August 3, 1932. This depends on the question when the restaurant's debt to the bank matured, within the meaning of defendant's guaranty that he would be responsible "in the event that any such debt is not paid at maturity."

■■ Plaintiffs urge that the restaurant's debt did not mature at the time of the fruitless sale of its assets in 1930, because the bank as trustee failed to make a demand on the restaurant after the sale. We cannot accept this contention. A default had occurred of such a sort that the trustee was authorized to, and did, sell the entire property of the debtor. The trustee was thereupon authorized and required by the trust agreement to apply any proceeds, after deduction of sums due it as trustee, to the "payment of the remaining unpaid principal and interest of the outstanding notes." When a debtor's property has been sold, in accordance with his contract, to satisfy his debt, and the contract provides that the debt shall be paid out of the proceeds of the sale and does not provide that the payment shall be postponed to any later date or event, it is a contradiction in terms to say that the debt has not yet matured. We think the restaurant's debt, which defendant had guaranteed, must be regarded as having reached "maturity" not later than the date of the sale which was duly conducted for the purpose of discharging it.

■ The restaurant's promise, at the end of the quoted paragraph of the trust agreement, to "pay the deficit to the Trustee on demand," casts no doubt on the conclusion that the entire debt became due at the time of the sale; on the contrary, it reenforces that conclusion. In general, one agrees to pay "on demand" obligations that are presently due, not those which are to become due in the future. The promise of the restaurant that, after the sale of the assets, it would pay the notes on demand, obviously made the notes demand obligations from the date of the sale. "A promissory note payable on demand is a present debt, payable without any demand, and the statute begins to run from its date." Kenyon v. Youngman, 59 App.D.C. 300, 40 F.2d 812, 813.

■ It is true that if a note or the accompanying deed of trust provides that default in interest shall accelerate maturity "at the option" of the holder the note does not mature, so as to start the statute of limitations, on mere default; the holder must first exercise his option. Moline Plow Company v. Webb, 141 U.S. 616, 625, 12 S.Ct. 100, 35 L.Ed. 879; Wheeler & Wilson Mfg. Co. v. Howard, C.C., 28 F. 741. Cf. 34 A.L.R. 898. But that is not this case. Even when the contract states in absolute terms that the instrument becomes due upon default, it has sometimes been held[2] that the period of limitations does not begin to run upon default "without some affirmative action" by the creditor, "such as a notification to the debtor, by a suit or

---

[1] D.C.Code, Tit. 24, § 341.

[2] The cases are in conflict. 34 A.L.R. 901, 903.

otherwise, that on account of the default he elects to treat the entire indebtedness as due. Attention has * * * been called to the fact that to hold such provisions as the one in question to be self-operative would be to confer on the debtor the right to take advantage of his own wrong; that is, to mature an indebtedness which was intended as an investment for a given period, in advance of the time specified on the face of his note or bond, by failing to keep his engagements."[3] That, again, is not this case; for here the trustee, although it made no idle demand upon the penniless restaurant, sold the entire property in order to collect the entire debt, which indicated as plainly as anything could its election to "treat the entire indebtedness as due."

Cafritz Construction Company v. Mudrick, 61 App.D.C. 189, 59 F.2d 864, which both parties cite, throws no light upon the point. In that case the deed of trust provided for acceleration of the notes at the election of the holder; the holder elected to sue, and recovered. The other cases on which the bank relies are also distinguishable. In Union Trust Co. v. Detroit Motor Co., 117 Mich. 631, 76 N.W. 112, 113, the form of the guaranty was that the bonds "should be paid in accordance with the terms thereof;" the defendants guaranteed "the prompt payment of the same, both principal and interest, at the time and times specified in the bonds, and in each of them." On a default in interest the trustee declared the principal due, and started foreclosure proceedings, in accordance with the terms of the trust agreement. The emphatic references to the "times specified in the bonds" and to "the terms thereof" were held to defeat a claim that the liability of the guarantors was accelerated. There is no similar language here. In Dougan v. Evansville & T. H. R. Co., 15 App.Div. 483, 44 N.Y.S. 503, 507, 508, a provision in a mortgage making the bond, on a default in interest, immediately collectible out of the mortgaged premises, with no provision making the bond collectible against the maker personally, was held not to mature the obligation of one who had guaranteed the bond "according to the tenor and effect thereof." In the present case the contract makes the note collectible against the maker personally. In Morton v. Rock Bottom Coal Co., 91 W.Va. 169, 112 S.E. 396, it was held that the acceleration provision there construed did not give an individual bondholder a right of action against the maker of the bond. In the present case, the question who could have sued the restaurant is not involved; it is enough that the restaurant's debt, however collectible, had matured.

If the bank's contention, that demand by the trustee was necessary in order to accelerate the maturity of the restaurant's debt and start the guarantor's liability, could be sustained at all, it could only be giving a supposed literal meaning to "maturity," and by disregarding the evident intention of the parties that defendant should become presently liable when the restaurant became presently liable. But a strict construction of the defendant's guaranty, even if conceivably it might aid the plaintiffs so far as "maturity" is concerned, would defeat them on a different ground. The guaranty is in terms limited to notes "discounted" by the bank. The collateral trust note to which the parties intended, and the plaintiffs seek, to attach the guaranty, was never discounted. The plaintiffs' case is therefore in this dilemma. Either the guaranty is to be construed in accordance with the evident intention of the parties, in which case it became a matured obligation in 1930 and the claim upon it is barred by the statute of limitations; or it is to be construed narrowly and literally, in which case it has never covered the note which plaintiffs hold.

If it were doubtful whether the guaranty matured in 1930, the construction which the parties placed upon the matter at the time would be entitled to great weight. Topliff v. Topliff, 122 U.S. 121, 7 S.Ct. 1057, 30 L.Ed. 1110; Thronateeska Pecan Co. v. Matthews, 5 Cir., 277 F. 361. The bank's officers thought it had matured then, and instructed an attorney to enforce it; the attorney told defendant it had matured; and defendant did not question it. We need not consider whether, if the language of the guaranty had made a demand by the trustee on the restaurant necessary under normal circumstances, the obvious futility of demand under the particular circumstances would have dispensed with the requirement.

As the suit is barred by the statute of limitations, we need not inquire whether the guaranty was supported by consideration.

Affirmed.

---

[3] Keene Five Cent Savings Bank v. Reid, 8 Cir., 123 F. 221, 224, certiorari denied 191 U.S. 567, 24 S.Ct. 841, 48 L. Ed. 305.