**HOLBROOK et al. v. PETROL CORPORATION (three cases).**

Nos. 9245–9247.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1940.

Rehearing Denied June 6, 1940.

Wood, Crump & Rogers, Joseph J. Rifkind, and George A. Elstein, all of Los Angeles, Cal. for appellants.

Henry G. Bodkin, of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

These cases were consolidated for the purpose of appeal because they presented similar questions and involved the same parties, save that the appellant, who was plaintiff in each of them, appeared in each case as the receiver of a different corporation. These corporations, Blue Ridge Oil Company, Ltd., George Wolfe and Chanel Oil Company, Ltd., and Del Oro Oil Company, had been producing crude petroleum from properties owned or leased by them. Each corporation was defendant in an equity receivership in the District Court. Operations were continued by the receivers in each case. Upon his appointment as receiver to succeed other receivers previously appointed Holbrook, in each instance, continued this production. In that capacity he entered into contracts with the appellee, the Petrol Corporation, which was engaged in the business of buying and refining crude petroleum. These contracts were all approved by the court. They provided for the sale by the receiver to the Petrol Corporation of all the crude oil to be produced from the various wells and properties of the companies represented by him.

In each of the three cases the appellant sought to recover a balance alleged to be due from appellee for crude oil sold and delivered to it and prayed for an accounting, his theory being that the particular contract intended to govern the transactions between the parties was void for indefiniteness, thus necessitating reliance upon the market value of the oil delivered as the proper basis of settlement. The defendant claims in each case that the oil had been

actually delivered and payment therefor fully made in accordance with the express terms of the applicable contract as practically construed by the parties. Appellee also filed a cross-complaint in each case, seeking recovery of advances made for oil to be delivered in accordance with the terms of the contract but as to which there had been a failure of delivery.

The court below referred the issues of law and fact in each of the three cases to a special master who found in favor of appellee in each instance, both upon the issues raised by the complaint and those raised by the cross-complaint. The court approved the report of the master and gave judgment accordingly.

We shall first consider the case involving the receivership of the Blue Ridge Oil Company. In its behalf the appellant had entered into two contracts with the appellee corporation. The first was for the sale of all oil to be produced from the Blue Ridge Company's wells numbered (1), (2) and (4). The second was for oil to be produced from its well numbered (3). The first contract was of the same form as that used in the case of the Wolfe-Chanel Company, and, though differing in some respects from that applicable to Blue Ridge's well number (3), has been treated by the parties as typical of all the contracts involved in this appeal.

In this contract it was provided that the price to be paid for crude oil should be in accordance with a sliding scale based upon the published price of gasoline and upon the gravity of the oil delivered.[1] This contract contained a tabulation showing the prices to be paid for crude oil of gravity ranging from 20° to 40.9°, according to published prices for U. S. motor gasoline ranging from 7.99 cents to 18.99 cents per gallon.[2] The contract expressly provided for the purchase of crude oil of a gravity less than 20° but did not expressly provide in the table of prices for the price per barrel of crude oil when the price of gasoline was less than 7.99 cents per gallon nor for the price of oil of less than 20° gravity except as hereinafter stated.

The appellant claims that inasmuch as the contract did not fix the purchase price of crude oil having a gravity of less than 20° he is, as to oil of such gravity, entitled to a judgment for the market value of the oil less credits for payments received. The

[1] In addition to the two variables mentioned there were other variable factors, including the amount of oil commingled with water and with impurities therein. (M. & B.S.)

[2] AVERAGE PRICE (cents per gallon)
58°–60° 437 endpoint (U. S. Motor Gasoline)

| Gravity of Crude Oil | Below 7.99 | 8 to 8.99 | 9 to 9.99 | 10 to 10.99 | 11 to 11.99 | 12 to 12.99 | 13 to 13.99 | 14 to 14.99 | 15 to 15.99 | 16 to 16.99 | 17 to 17.99 | 18 to 18.99 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 to 20.9 | .38 | .48 | .58 | .63 | .73 | .83 | .92 | 1.02 | 1.12 | 1.20 | 1.30 | 1.40 |
| 21 to 21.9 | .42 | .52 | .62 | .67 | .77 | .87 | .96 | 1.06 | 1.16 | 1.24 | 1.34 | 1.44 |
| 22 to 22.9 | .46 | .56 | .66 | .71 | .81 | .91 | 1.00 | 1.10 | 1.20 | 1.28 | 1.38 | 1.48 |
| 23 to 23.9 | .50 | .60 | .70 | .75 | .85 | .95 | 1.04 | 1.14 | 1.24 | 1.32 | 1.42 | 1.52 |
| 24 to 24.9 | .54 | .64 | .74 | .79 | .89 | .99 | 1.08 | 1.18 | 1.28 | 1.36 | 1.46 | 1.56 |
| 25 to 25.9 | .58 | .68 | .78 | .83 | .93 | 1.03 | 1.12 | 1.22 | 1.32 | 1.40 | 1.50 | 1.60 |
| 26 to 26.9 | .62 | .72 | .82 | .87 | .97 | 1.07 | 1.16 | 1.26 | 1.36 | 1.44 | 1.54 | 1.64 |
| 27 to 27.9 | .66 | .76 | .86 | .91 | 1.01 | 1.11 | 1.20 | 1.30 | 1.40 | 1.48 | 1.58 | 1.68 |
| 28 to 28.9 | .70 | .80 | .90 | .95 | 1.05 | 1.15 | 1.24 | 1.34 | 1.44 | 1.52 | 1.62 | 1.72 |
| 29 to 29.9 | .74 | .84 | .94 | .99 | 1.00 | 1.19 | 1.28 | 1.38 | 1.48 | 1.56 | 1.66 | 1.76 |
| 30 to 30.9 | .78 | .88 | .98 | 1.03 | 1.13 | 1.23 | 1.32 | 1.42 | 1.52 | 1.60 | 1.70 | 1.80 |
| 31 to 31.9 | .83 | .93 | 1.03 | 1.08 | 1.18 | 1.28 | 1.37 | 1.47 | 1.57 | 1.65 | 1.75 | 1.85 |
| 32 to 32.9 | .88 | .98 | 1.08 | 1.13 | 1.23 | 1.33 | 1.42 | 1.52 | 1.62 | 1.70 | 1.80 | 1.90 |
| 33 to 33.9 | .93 | 1.03 | 1.13 | 1.18 | 1.28 | 1.38 | 1.47 | 1.57 | 1.67 | 1.75 | 1.85 | 1.95 |
| 34 to 34.9 | .98 | 1.08 | 1.18 | 1.23 | 1.33 | 1.43 | 1.52 | 1.62 | 1.72 | 1.80 | 1.90 | 2.00 |
| 35 to 35.9 | 1.03 | 1.13 | 1.23 | 1.28 | 1.38 | 1.48 | 1.57 | 1.67 | 1.77 | 1.85 | 1.95 | 2.05 |
| 36 to 36.9 | 1.08 | 1.18 | 1.28 | 1.33 | 1.43 | 1.53 | 1.62 | 1.72 | 1.82 | 1.90 | 2.00 | 2.10 |
| 37 to 37.9 | 1.13 | 1.23 | 1.33 | 1.38 | 1.48 | 1.58 | 1.67 | 1.77 | 1.87 | 1.95 | 2.05 | 2.15 |
| 38 to 38.9 | 1.18 | 1.28 | 1.38 | 1.45 | 1.53 | 1.63 | 1.72 | 1.82 | 1.92 | 2.00 | 2.10 | 2.20 |
| 39 to 39.9 | 1.23 | 1.33 | 1.43 | 1.48 | 1.58 | 1.68 | 1.77 | 1.87 | 1.97 | 2.05 | 2.15 | 2.25 |
| 40 to 40.9 | 1.28 | 1.38 | 1.48 | 1.53 | 1.63 | 1.73 | 1.82 | 1.92 | 2.02 | 2.10 | 2.20 | 2.30 |

This tabulation applies to wells (1), (2) and (4) of the Blue Ridge Oil Co. and to those of the Wolfe-Chanel Co; while in the contract for the Del Oro Oil Co. the first column in the tabulation is headed "7 to 7.99" instead of "below 7.99". It does not apply to oil from Blue Ridge Oil Co's. well number (3), which was covered by a different type of contract with prices fixed in a different way.

basic contention of appellant's counsel is perhaps best stated in the language of his brief, which is as follows: "Plaintiffs contend that the contracts are ambiguous, uncertain and unworkable, that the minds of the parties never met with respect to the prices to be paid for crude oil, that the contracts were abandoned by the parties and that plaintiffs are entitled to recover the reasonable market value of oil delivered to Petrol. They seek an accounting and payment of the reasonable market price, or reasonable value of oil delivered, less moneys owing Petrol for advances."

Appellee, on the other hand, contends that the table fixing prices in the contract should be extended to cover lower gravity oil with a reduction of 4 cents per barrel for each degree of decreased gravity, thus following the table rates in accordance with the contract provision for covering lower prices of gasoline. This contention was advanced from the first by the appellee in dealing with the receiver and was acquiesced in by the receiver.

The contract does provide for extending the table of prices to cover gasoline prices of less than 7 cents per gallon and those higher than 18.99 cents per gallon;[3] but it may be conceded, for the purpose of this appeal, though appellee's contention is otherwise, that it does not provide expressly for fixing the price to be paid for crude oil where the gravity of the oil is less than 20°. Because of this assumed failure of the contract to cover oil of this lower gravity appellee contends that as to such oil the delivery price should be fixed at the reasonable market value. But if the market values in evidence had been applied in accordance with that contention an absurd result would have been reached. Instead of selling at 4 cents less per barrel than the price paid for 20° gravity oil, according to the table as extended by appellee, oil of 19° gravity would have sold for approximately as much as though it were of 30° to 30.9° gravity and for twice as much as though it were 20° gravity and sold in either case in accordance with the table expressly covering oil of such higher gravity. This obviously could not have been intended by the parties.

It is clear, in view of the ambiguities of the contract, that we have here a case for the application of the rule that the practical construction of the contract by the parties may be considered in determining their intent. The principle was thus stated by Mr. Justice Swayne in delivering the opinion of the court in Brooklyn Life Insurance Co. v. Dutcher, 95 U.S. 269, 273, 24 L.Ed. 410: "The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to. The probabilities are largely in the direction of the former. In considering the question before us, it is difficult to resist the cogency of this uniform practice during the period mentioned, as a factor in the case."

See also Topliff v. Topliff, 122 U.S. 121, 131, 7 S.Ct. 1057, 30 L.Ed. 1110; Old Colony Trust Co. v. Omaha, 230 U.S. 100, 118, 33 S.Ct. 967, 57 L.Ed. 1410.

The special master to whom the matter was referred held that the parties had placed a practical construction upon the contract with reference to prices to be paid for crude oil of the character and quality which was actually received by the buyer. Exceptions were filed to this report but the trial judge overruled them and confirmed the report and findings of the master. That these findings were amply supported by the evidence is clear. To state the evidence would unnecessarily lengthen this opinion. Some of the outstanding facts must suffice for our present purpose.

The dealings of the appellant and appellee with respect to oil from the wells of the Blue Ridge Oil Company, most of them apparently conducted under the particular contract so far considered, covered a period of over two years and the delivery of 360,-479.46 barrels of crude oil at an agreed price of $106,148.14, according to appellee's contention and the findings of the special master. During this period the appellee delivered monthly statements to the receiver, showing the amount of oil received, its gravity and the price to be paid therefor. During this period large amounts of money

---

[3] "(b) In the event that the price of said gasoline f. o. b. refinery during the term of this agreement shall be higher or lower than the price schedule above set forth, the same shall be extended or diminished to cover price accordingly. The basis or ratio for such extension shall be the same as the schedule of prices."

($132,889.65 in all) were advanced to the receiver by the Petrol Corporation to enable the former to carry on his operations in the development and production of oil from the Blue Ridge Company's wells. The purchase price for the oil delivered under the contract by the receiver to the Petrol Corporation was credited upon these advances, leaving a balance of $24,189.04 due the appellee. The receiver presented his accounts to the court in the receivership proceedings, showing the amount received or credited for oil sold to the appellee and his accounts were settled by the court accordingly. The receiver was also required by the leases under which he operated to pay royalties to the owner and royalties were paid in the form of percentages of the amount paid or credited by appellee corporation to the appellant receiver.

It should be stated, however, that it was recognized and understood by both parties that some of the credits given by the Petrol Corporation to the receiver for oil sold and delivered exceeded the amounts called for by the contract as construed by the corporation and acquiesced in by the receiver. The excess in such cases was characterized by it as a "bonus". This credit was allowed because at times, owing to the extremely low price of gasoline, the low gravity of the oil delivered, and the presence of impurities in the oil, the contract price, as construed by the parties, resulted in an extremely low and unremunerative price for the oil. These credits were given not as a matter of grace on the part of the corporation but as the result of agreements between the parties fixing special prices for many specific deliveries. But this practice was not regarded by either party as an abandonment of the main contract; for, under the circumstances above stated, that contract did not require the Petrol Corporation to buy the low gravity oil or the receiver to sell it.[4] Entirely consistent with the main contract each of these special contracts resulted in the sale and delivery of oil which, under the main contract, the seller could have refused to deliver or the buyer to receive. That contract continued to control when applicable.

The contract dealing with oil produced by the Blue Ridge Company's well number (3), which based the price of crude oil upon the "average tank wagon price of gasoline" delivered at service stations in Los Angeles by four specified major oil companies, need not be considered in detail; but it too was attacked by appellant as ambiguous with reference to oil of less than 20° gravity. What has been said of the practical construction placed by the parties upon the first Blue Ridge contract is in substance equally applicable to this contract and deliveries thereunder need not be further considered.

In view of the fact that the parties by their conduct placed a similar practical construction upon the contracts for the purchase of the oil of Del Oro Corporation and of the Wolfe-Chanel Company, it is unnecessary to consider separately the slight differences in the terms of these contracts either with respect to each other or to the two Blue Ridge contracts already considered. The parties placed a similar practical construction upon all of them so far as they are here involved.

The appellee, by way of cross complaint in each case, sought to recover the balance of money due it for the advances made to the receiver. There is no dispute as to the amount advanced. The only question involved was whether or not the Petrol Company had given proper credit for the oil delivered. The holding that these credits were in accordance with the contract as construed by the parties requires an affirmance of the decrees of the trial court in

4 " * * * if crude oil under such ratio is priced at fifty cents (50¢) or lower, seller may, at its election, suspend deliveries hereunder and store crude oil during the period that crude oil is so priced. Provided, however, that such suspension shall not operate as a cancellation hereof."

"2. In the event the crude oil tendered for delivery hereunder shall be of a gravity lower than the minimum gravity herein set forth and/or the M&BS and/or sulphur content of the crude oil is greater than the maximum specified above, buyer, at its option, may accept delivery of said crude oil and make a deduction from the price outlined in paragraph 5-a of One (1¢) cent per barrel for each one per cent (1%) of M&BS and/or sulphur content greater than three per cent (3%) with a minimum of ten (10¢) cents per barrel for the cost of cleaning or dehydrating, plus the cost of transportation of the oil from the seller's tanks to the cleaning or dehydrating plant, provided, however, such acceptance of such crude oil shall not be construed as a waiver of buyer's right to refuse to accept such crude oil."

favor of the Petrol Corporation in each case.

In view of our conclusion it is unnecessary to consider other points advanced in support of the judgment.

Affirmed.