## ACME LAND & FUR CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8020.

Circuit Court of Appeals, Fifth Circuit.
June 10, 1936.

John J. Finnorn, of New Orleans, La., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., Harry Marselli, Sewall Key, and Norman D. Keller, Sp. Assts. to Atty. Gen., and Herman Oliphant, Gen. Counsel, Department of Treasury, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The sole question this petition presents for review is whether moneys, paid petitioner out of amounts raised by the inhabitants of the city of New Orleans to reimburse owners of crevasse property for losses from the destruction of wild life thereon, were income subject to taxation.

Petitioner insists that it was not, because (1) the payment was not gain derived from capital or labor, or gain from both capital and labor, or gain through the sale or conversion of capital, but a mere gratuity or gift and therefore not income within the meaning of the statute. (2) It was tax-exempt because paid to it by the state.

The Board, in a carefully considered opinion, examining and rejecting these contentions, 31 B.T.A. 582, has set out clearly and fully the facts which give rise to the question. We need only say that the levee was broken and the crevasse was

made because it seemed necessary to do so to prevent the city of New Orleans from becoming inundated, and that its making was authorized after and upon the understanding that provision would be made by the inhabitants of that city to compensate those injured for their benefit by its making. Under a constitutional amendment authorizing bonds to be issued payable by and chargeable against the property of the citizens of New Orleans, funds were realized out of which the state of Louisiana, as intermediary, caused the sums in question to be paid to petitioner. The first thing to be noted here is that the state of Louisiana has not, and never has had, a direct financial concern in the matter. It has acted throughout as intermediary to see that justice was done by the citizens of New Orleans benefited by the crevasse, and therefore justly obligated to owners of crevasse property injured by it.

The second point to be noted is that though if the constitutional amendment had not carried, and the bonds had not been issued, petitioner might not have been able to compel payment, there was a definite, a clear understanding between the crevasse owners and the citizens of New Orleans carrying an obligation, if not a legal one, certainly one sounding in justice and equity, that their losses should be repaid by those for whose sake they had been borne. Whatever the legal status of this promise before it was carried out, after it was and the money had become available to petitioner, it was received by it in no sense as a gift or gratuity, but as the discharge of a valid, if unenforceable, obligation arising out of the situation and its recognition by agreement, and is to be accounted for like any other gain through the sale or conversion of capital would be. United States v. Realty Co., 163 U.S. 427, 16 S.Ct. 1120, 41 L.Ed. 215; City of Houston v. Stewart, 99 Tex. 67, 87 S.W. 663, 665. In the last-cited case the Supreme Court of Texas held that refunding certificates, issued by all the citizens of Houston to repay some who had been compelled to bear the whole cost of paving under a plan afterwards abandoned, were just and enforceable obligations. It said: "It was within the power of the Legislature to authorize the city to make an equitable adjustment of these matters so as to equalize the burden upon the property of its citizens." Cf. Marine Transportation Co. v. Commissioner (C.C.A.) 77 F.(2d) 177; Flynn v. Commissioner (C.C.A.) 77 F.(2d) 180; Texas & P. R. R. Co. v. United States, 286 U.S. 285, 52 S.Ct. 528, 76 L. Ed. 1108.

Not a single element requisite in a gift was present. Every element of a quid pro quo was. Not only is there present the almost irrebutable presumption that a state would not make a gift of public moneys to a private corporation, but every fact here negatives both that intention and that result.

There is no substance either, in the other point, that the payment was tax-exempt because made to petitioner by the state. The tax upon these moneys was in no sense a levy upon "instrumentalities, means or operations whereby the State exerts the governmental powers belonging to it." The imposition of the tax will not, it cannot, in any way burden the state. The amounts were paid by the citizens of New Orleans under an agreement they made. They are certainly no more tax-exempt than amounts paid in or as the result of condemnation proceedings. It is well settled that these are not exempt where the taxpayer, under the special statute applicable to them, does not use them to purchase other similar property to take the place of that sold. Fullilove v. United States (C.C. A.) 71 F.(2d) 852.

The order of the Board is affirmed.