## FULMER *v.* GOLDFARB.

### (*Nashville,* December Term, 1936.)

Opinion filed February 27, 1937.

ANDREW J. DONELSON, of Memphis, for plaintiff in error.

CHARLES L. GLASCOCK, of Memphis, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

In January, 1931, Mrs. Hays Fulmer and I. H. Evans made an exchange of real property in the city of Memphis, Mrs. Fulmer conveying to Evans her residence for a consideration of $25,000, and Evans conveying to Mrs. Fulmer his apartment house valued at $52,750. The residence was unencumbered. The apartment was encumbered with a first mortgage for $40,500, and a second mortgage for $2,250, evidenced by forty-five notes of $50 each, payable monthly; the payment of both mortgage debts being assumed by Mrs. Fulmer without, however, signing or indorsing the notes evidencing the indebtedness.

In 1933, Evans transferred eleven of these $50 notes, before their maturity, to Al Goldfarb, in consideration of which Goldfarb agreed to extend the time of payment of an indebtedness owing to him by Evans, which was secured by a mortgage on a piece of real property. These notes were executed by Evans, payable to bearer, and were transferred by mere delivery.

The present suit was instituted by Goldfarb, in 1934, against Mrs. Fulmer upon her promise to pay said second mortgage notes. Mrs. Fulmer, by way of defense, pleaded a set-off of $17,000 which Evans owed her, and which she alleged grew out of the same transaction by which she assumed the payment of the second mortgage notes.

It is necessary to state the following additional facts: Mrs. Fulmer conveyed her residence to Evans under an agreement that he could encumber same with a first mortgage for $10,000, and should then execute a second mortgage to secure the deferred purchase-money notes which he had executed to her for $15,000. Evans duly executed both mortgages but defaulted in paying these purchase-money notes, whereupon the residence was sold under the second mortgage, subject to the first, and was purchased by the daughter-in-law of Mrs. Fulmer for $1,000, and who shortly thereafter sold it for $3,500, subject to the first mortgage. The evidence shows that this property had greatly depreciated in value as a result of the economic depression.

When the present action was begun, Evans, who is insolvent, owed Mrs. Fulmer $17,003.94 on the purchase of her residence, which included interest in the sum of $3,565.

The trial court entered judgment against Mrs. Fulmer for $730, which included interest and her attorney's fee. The Court of Appeals sustained Mrs. Fulmer's plea of set-off, reversed the circuit court, and dismissed the suit.

In this state the rights of a mortgagee as against a person assuming the payment of the mortgage debt upon a conveyance of the mortgaged premises are based

upon the principle of a contract made for the benefit of a third person. *Title Guaranty & Trust Co.* v. *Bushnell,* 143 Tenn., 681, 228 S. W., 699, 12 A. L. R., 1512.

It is also the rule in this jurisdiction that a third person who is the beneficiary of such contract may maintain in his own name an action at law upon the contract against the promisor. *Associated Indemnity Corp.* v. *McAlexander,* 168 Tenn., 424, 79 S. W. (2d), 556; *Christian* v. *John,* 111 Tenn., 92, 103, 76 S. W., 906. This rule, however, is not absolute in all cases.

Section 8768 of the Code, in part, provides:

"The defendant may plead by way of set-off or cross-action: . . .

"(3) Any matter growing out of the original consideration of any written instrument, for which the defendant would be entitled to recover in a cross-action.

"(4) Any equities between the defendant and the original party under whom the plaintiff claims, which by law have attached to the demand in the plaintiff's hands, and for which the defendant would be entitled to a recovery against such original party."

The principle of law invoked by defendant is stated succinctly in 41 C. J., 754, as follows:

"In the case of a contract by the grantee of mortgaged premises to assume the payment of the mortgage thereon, where the mortgagee is not a party to such contract and has paid no part of the consideration, he acquires no greater rights than the covenantee or promisee, and takes the covenant subject to all legal and equitable defenses which would have been available against him."

A more comprehensive statement of the rule is contained in 6 R. C. L., 886, in this language:

"Even in jurisdictions which recognize the right of

a beneficiary to enforce the contract, the agreement between the promisor and promisee must possess the necessary elements to make it a binding obligation—in other words, it must be a valid contract between the parties to enable a third person, for whose benefit the promise is made, to sue upon it. A mere naked promise from one to another for the benefit of a third will not sustain an action. Necessarily the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties, and the right to recover from the promisor is not absolute in all cases. The beneficiary is in fact asserting a derivative right. Therefore, among other limitations, the party to be benefited takes subject to all inherent equities arising out of the contract, as affecting the principal parties.''

The annotator of 21 A. L. R., 488, makes this clear statement:

''The holder of a mortgage can avail himself of no right, on an assumption of the mortgage, beyond what the mortgagor would have against his grantee; and if the mortgagor cannot enforce against the grantee a contract for the assumption of the mortgage debt, the mortgagee is likewise without remedy against him.''

The rule as formulated by the American Law Institute in Restatement of the Law of Contracts, vol. 1, sec. 140 is as follows:

''There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or unenforceable at the time of its formation, or subsequently ceases to be binding in whole or in part because of impossibility, illegality or the present or prospective failure of the promisee to perform a return

promise which was the consideration for the promisor's promise, the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation.''

The rights of the parties under such an agreement are thus defined by Mr. Williston in his late work on Contracts, vol. 2, sec. 394:

''Another question concerns the admissibility of certain defenses by the promisor. When sued by the third person, the promisor may rely on facts showing that the promisee could not enforce the contract. Is the third person barred because the promisee would be? It is necessary to observe some distinction here. As has been pointed out, the foundation of any right the third person may have, whether he is a donee beneficiary or a creditor of the promisee, is the promisor's contract. It follows that any defense arising in connection with the formation of the contract, such as lack of capacity or want of mutual assent or consideration, is available to the promisor against the beneficiary. Further, if there is a contract valid at law, but subject to some equitable defense—as fraud, mistake, or failure of consideration, —the defense may be set up against the third person. If the undertaking is to pay a debt or discharge a duty of the promisee, the rights of the third person can be derived only through a right of the promisee, and whatever defense affects the latter affects the creditor.''

The notes to the foregoing texts cite numerous cases supporting the rule. The reason for the rule is forcefully stated by the Court of Appeals of New York in *Dunning* v. *Leavitt*, 85 N. Y., 30, 39 Am. Rep., 617, as follows: ''The party suing upon the promise . . . is in truth asserting a derivative right. . . . There

is no justice in holding, that an action on such a promise is not subject to the equities between the original parties springing out of the transaction or contract between them. It may be true that the promise cannot be released or discharged by the promisee, after the rights of the party for whose benefit it is said to have been made, have attached. But it would be contrary to justice or good sense to hold that one who comes in by . . . 'the privity of substitution,' should acquire a better right against the promisor than the promisee . . . had.''

A case very similar in its facts to the one under consideration is *Episcopal City Mission* v. *Brown*, 158 U. S., 222, 15 S. Ct., 833, 835, 39 L. Ed., 960, in which Brown and Meserve exchanged lots, each assuming the payment of a mortgage on the other's property. The mortgage assumed by Brown was one which Meserve had executed to the Episcopal Mission. Upon Brown's failure to pay, the Mission sued him. Brown pleaded by way of set-off the mortgage debt assumed by Meserve, as to which he had defaulted, and which exceeded in amount the mortgage assumed by Brown. In sustaining the plea of Brown, the court, speaking through MR. JUSTICE WHITE, said:

''Whatever be the obligations created by the assumptions contained in the deeds to Mrs. Brown and the bond which was furnished by Brown, it is clear that the mission has only the rights of Meserve, and therefore can assert only such clause of action, legal or equitable, as Meserve may possess. *Keller* v. *Ashford*, 133 U. S., 610, 10 S. Ct., 494 [33 L. Ed., 667]; *Willard* v. *Wood*, 135 U. S., 309, 10 S. C., 831 [34 L. Ed., 210]. The corporation being thus limited to the rights which it takes from

Meserve, it is clearly subject to all set-offs existing between Meserve and Brown.''

The rule finds support, in principle, by our cases of *Ford* v. *Thompson*, 38 Tenn. (1 Head), 265, 266, and *Gatewood* v. *Denton*, 40 Tenn. (3 Head), 380, where it was held that under the set-off statute the assignee of a note after maturity takes it subject to all of the equities of the original parties.

It is useless to further extend this discussion, since the rule adopted by the Court of Appeals is almost universal in its application. The cause having been correctly decided by that court, it follows that the writ will be denied.