### McCARNEY v. SCOTT et al.

#### No. 127.

Circuit Court of Appeals, Second Circuit.

Dec. 28, 1944.

Rehearing Denied Jan. 19, 1945.

Arthur L. Burchell and Joseph H. Wackerman, both of Brooklyn, N. Y., for appellants.

Sydney S. Bobbe, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued the defendants for their refusal to pay him a commission of ten per cent upon the amount paid to the defendants upon a contract procured through his mediation. The only question is whether the plaintiff proved a case for submission to the jury; as to which the evidence was as follows. Since all the transactions were between the plaintiff and David Cairnes Scott, one of the partners, we shall state the case as though Scott were the only defendant. McCarney and Scott had talks in which Scott promised that if McCarney got him "contacts" with manufacturers which resulted in contracts, he would pay McCarney a commission, the amount of which was left uncertain. McCarney first put Scott in "contact" with the Brewster Aeronautical Corporation, out of which no contract resulted; but later he put Scott in "contact" with one, Smith, who in turn put him in "contact" with an engineer of the Remington-Rand Corporation, named Weld. McCarney's commission continued uncertain; he had asked for $12,000, and Scott had answered that that "was out," and had offered him ten per cent. McCarney did not accept this; he swore that Scott "started to go into a lot of technical details about negotiated contracts and bidding against others in getting business." So matters stood until Scott sent McCarney a letter which promised ten per cent upon any orders "obtained by negotiation," and concluded: "We have been advised by telephone that we are receiving an order tomorrow; this was obtained in competitive bidding." McCarney acknowledged that this letter was "the complete contract between" Scott and him; and he never repudiated it. It is clear from the deposition of Bendall, a buyer of the Remington-Rand Corporation, that Scott's contract with that company was "obtained by competitive bidding" and not "by negotiation," although the prices of the units were later changed, and the quantity was greatly reduced. Nevertheless after Scott got the contract, he repeatedly promised to pay McCarney on the basis of the written contract between them—ten per cent. The judge left it to the jury to say whether the parties had not by "practical construction" construed their contract to cover Scott's contract with the Remington-Rand Corporation, and they brought in a verdict of ten per cent.

When the parties agreed that Mc-Carney should put Scott in "contact" with the manufacturer, a contract indeed resulted, but McCarney's pay was based on a quantum meruit; it was understood that McCarney should have something, but not how much. Scott's letter was not the offer of an executory accord; it was an offer of a contract which should be a substitute for the preceding quantum meruit. If accepted, it became the measure of Scott's obligation. Moers v. Moers, 229 N.Y. 294, 300, 301, 128 N.E. 202, 14 A.L.R. 225; Restatement of Contracts §§ 418, 419. Mc-Carney did accept it, for although he professed on the stand not to have understood the talk about "negotiated" and "competitive" contracts, he never suggested to Scott that Scott had in any way overreached him, nor did he ever tell Scott that he did not know what the letter meant, or what Scott had been talking about. He was concluded by whatever meaning a court might impute to the words; his own private understanding did not count; for the words themselves were clear; and indeed Scott had actually construed them in the letter itself, when he described the Remington-Rand order as "competitive." The plainest good faith demanded that McCarney should then and there repudiate the letter, if he did not agree. There was thus no room for "practical construction," and the judge should have directed a verdict. Mc-Carney had merely failed to prove his case; although he had performed his part, and had made a contract, it was a contract under which Scott promised to pay commissions only on "negotiated" orders—a condition which was not fulfilled.

Finally, it was irrelevant that, after he got the Remington-Rand contract, Scott said he would pay the commission. That promise was without consideration, and created no contract. Indeed it may have been no more than a generous gesture.

Judgment reversed, complaint dismissed.

On petition for rehearing.

PER CURIAM.

The Court of Appeals in Higgs v. De Maziroff, 263 N.Y. 473, 189 N.E. 555, 92 A.L.R. 807, decided—though obiter—that when a party without objection allows oral testimony to be taken as to the terms of a contract which has been reduced to writing, he surrenders—"waives"—the position that the writing is the final memorial of the parties' intentions. The court declared that, although the doctrine which usually passes under the name of the "parol evidence rule" is one of substantive law, i. e., what the actual contract was; by accepting the admission of oral evidence without protest, a party allows the issue to be changed and that the terms of the contract are then to be determined as though the writing had not been made the final memorial. If need were, we might wish to satisfy ourselves that the doctrine so laid down was not a part of the procedure for regulating the conduct of the trial, in which event it would not conclude us; but it is not necessary in the case at bar to decide the point. While the defendant was reading a part of his examination before trial which concerned talks that had preceded the letter of September 18th, the plaintiff himself objected that it was "against the parol evidence rule." This objection the court overruled and the plaintiff excepted. Again, when the plaintiff was examining his father as to talks between the parties after the letter had been sent, the defendant said: "Of course, if this evidence is intended to vary the terms of that written contract I am objecting to it." The plaintiff answered: "Oh, no," and the testimony proceeded. It is thus entirely plain that both parties asserted that the letter was the final memorial; and in addition the defendant specifically excepted to the judge's charge so far as it submitted to the jury "whether or not there is any ambiguity in the contract."

The reference to future talks at the conclusion of the letter plainly refers to whether it would be to the advantage of the parties that the next few orders from Remington-Rand should come through as "competitive," or as "negotiated." It had nothing to do with the order just received which was the only one on which the plaintiff recovered.

Petition denied.