## UNITED STATES v. INORGANICS, Inc. et al.

Civ. A. No. 1425.

United States District Court
E. D. Tennessee, N. D.

Dec. 19, 1952.

Otto Ault, U. S. Dist. Atty., Ferdinand Powell, Jr., Asst. U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

H. F. Jarvis, Joel H. Anderson, Harold Wimberly, Williston M. Cox, John W. Green, John Gilbertson, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action to recover an income tax assessment for the fiscal year ending June 30, 1947, against Inorganics, Inc. There is no basis for serious controversy as to the liability of Inorganics for payment of the tax. Enforcement of liability against Duggan, Spengler and The Lakeside Company is sought under the theory that the Government is third-party beneficiary of promises made by those three defendants to pay the tax.

W. H. Stapleton is made a defendant for the reason that, as Recorder for the City of Knoxville, he is the depositary of a sum of money awarded for the taking of certain land formerly owned by Inorganics, on which fund the Government seeks to have a lien impressed. It is conceded by the Government that no tax lien attached to the land of Inorganics, which land was acquired in succession by Spengler and The Lakeside Company. Recovery is sought against Duggan, Spengler and Lakeside on the theory that their liability for the tax became personal obligations because of undertakings made by them among themselves.

On August 23, 1946, Inorganics conveyed a tract of land to Canadian-Amer-

ican Truck Co., which, on the same date, conveyed the land to Wm. M. Johnstone. While the title remained in Johnstone, the tax assessment against Inorganics was made, but not collected. The tax then due was $4,474.20. A deputy collector called on defendant Spengler, who had been vice-president and general manager of Inorganics, for payment of the tax, which payment, as heretofore indicated, was not made.

Between August 23, 1946, and March 26, 1948, defendants Spengler and Duggan became interested in the purchase of the land from Johnstone. Discussions were carried on between Spengler and Duggan for several months in regard to the acquisition, as well as to the cost of the same. It was their understanding that the property could be bought for $18,000, with the uncertainty in the situation as to whether the purchaser might find himself liable for the income tax assessed against Inorganics. The existence of the assessment was known also to the attorneys who represented Johnstone in relation to the land and its contemplated sale.

Pursuant to a final agreement between Duggan and Spengler that they would purchase the land, those two entered into a contract which recites its date as March 24, 1948, and the date of its execution as a written instrument as April 12, 1948. In this contract appears the following:

"1. The purchase price of Inorganics Inc. Property is to be Eighteen Thousand Dollars ($18,000.00), together with the assumption by the purchaser of Four Thousand Seven Hundred Forty-Eight Dollars of income taxes previously assessed against said corporation, together with an undetermined amount of interest on the same.

"2. It is understood that the party of the first part (Duggan) will furnish all the money with which to purchase said property, and pay and discharge the lien for income taxes above mentioned, or such amount as is determined to be due and payable."

Thereafter by deed bearing date of March 26, 1948, acknowledged by the gran-

tors April 7, 1948, Johnstone and wife conveyed the land to Spengler. This deed recites that the property is free of encumbrances with the exception of a certain easement "and any unpaid State, County and City taxes which are a lien or may appear of record, together with an amount of $4,474.20 of income taxes assessed against Inorganics Inc., remaining unpaid all of which taxes are assumed (by) party of the second part, * * *."

It is shown by oral testimony that Spengler and Duggan intended to form a corporation which would take over the land to be acquired from Johnstone. Accordingly, by deed of April 12, 1948, Spengler and wife conveyed the land to the corporation, The Lakeside Company, Inc. This deed recites that the property is free of encumbrances with the exception of a certain easement "and any unpaid State, County and City taxes which are a lien or may appear of record, together with an amount of $4,474.20 of income taxes assessed against Inorganics Inc., remaining unpaid all of which taxes are assumed by party of the second part, * * *."

It was contemplated in the contract of April 12, 1948, between Spengler and Duggan that Spengler would become a stockholder in the corporation that was organized. By contract of June 20, 1949, Spengler sold his stock in the corporation to Duggan. This contract contains the following recitation:

"Upon execution of this contract the party of the first part becomes owner of all the capital stock of the said Lakeside Company, Inc., and he agrees and obligates himself to protect the party of the second part against any obligations of said corporation or against any claims of any kind against the party of the second part incident to or growing out of the connection of the party of the second part with said corporation, * * *."

It is upon the strength of the quoted inter partes agreements that the Government seeks to recover the tax, the legal theory relied on being that of third-party beneficiary.

The Government does not now insist that a tax lien had been fixed upon the land. Under 26 U.S.C. § 3670, a lien attaches to all property of any person liable to pay the tax who refuses to pay on demand. Here the property had been transferred by the taxpayer before demand for payment had been made. It cannot be said, therefore, that any of the defendants assumed satisfaction of a lien, for no lien existed. Nor had Johnstone incurred any personal liability for payment of the tax assessed against Inorganics: At the time of the conveyance to Spengler and Lakeside there existed a tax debt against Inorganics, but in the absence of any liability incurred by reason of the quoted assumptions no obligation to pay had been imposed upon Spengler, Duggan or Lakeside. Accordingly, the assumptions were grounded either upon mistaken belief or upon charitable impulse. Charity is emphatically disavowed.

For the reason that neither Johnstone nor Spengler owed the tax which Spengler purportedly assumed, the Government was not a creditor beneficiary of the third-party promise. Instead, it was donee beneficiary of a promise devoid of beneficent impulse. The instruments heretofore mentioned indicate that Spengler and Duggan were interested in acquiring the land from Johnstone not for the benefit of one or the other of them as individuals, but with a view to transferring it immediately to the corporation which they intended to organize. The property conveyed by Johnstone to Spengler, and by Spengler to Lakeside was the same property, and the recited consideration is the same in both deeds. In this situation it is apparent that Spengler was merely a go-between in the transfer of the property from Johnstone to Lakeside.

In his oral testimony Spengler stated:

"Well, I never gave the Government any consideration. It was between Duggan and myself. On the assumption that Mr. Duggan would assume the liability of income tax, if any, if it were correct or any portion of it. I cleared that from my mind; the income tax did not enter into my mind after he made the agreement that he would assume that. In other words, I figured it was his worry."

It further appears from the testimony of Spengler that assumption of the tax did not affect the consideration paid for the land. The price was $18,000. Attorneys representing Johnstone, aware of the tax demand made upon Inorganics, required that the assumption provision be included in the deed. But there was no provision in the deed or in any collateral agreement that in the event no tax was required to be paid by Spengler the consideration should be augmented in favor of Johnstone, or that Spengler should receive a refund from Johnstone in the event of payment of the tax by Spengler. Spengler testified:

"There wasn't anything to be done. The total price, purchase price then would have been $18,000.00. That's all."

In contracts, a promisor in order to be bound should receive a consideration for his promise. Here the purchase price of the land was $18,000. But before the owner would execute a deed the grantee was required to assume responsibility for payment of a tax liability. This promise to pay the tax was in addition to the purchase price, a consideration running not from the promisor to the promisee, but in the opposite direction. The result was an absence of consideration in support of the assumption of tax liability.

In Cunningham v. Broadbent, 177 Tenn. 202, 147 S.W.2d 408, 409, the Court said: "Appellant relies on the rule that a grantee of land, who assumes a mortgage outstanding thereon, becomes liable to the mortgagee, no privity of contract being held necessary, as was the English rule; but this rule has not been applied to a purely gratuitous assumption without consideration. Its application by this court, so far as we are advised, has been limited to cases where the land was acquired by the grantee. See Wright v. Bank of Chattanooga, 166 Tenn. 4, 57 S.W.2d 800, quoted from for appellant, and our cases cited therein. Moreover, a well recognized essential

580

predicate for the application of this rule is that the assumption agreement shall be a binding and enforcible obligation as between the original parties * * *. 'A grantee who has assumed and agreed to pay the mortgage debt, whether by covenant in his deed or because of a deduction or a retention from the purchase money to discharge the encumbrance, according to the rule now generally accepted in the United States, incurs a personal liability to the mortgagee which may be enforced in some form by the mortgagee against him, if the assumption agreement is valid and binding, and the debt has become and remains due and payable.' "

▆▆ In Fulmer v. Goldfarb, 171 Tenn. 218, 101 S.W.2d 1108, where a promisor having a set-off against the promisee was allowed to assert the set-off against the third-party beneficiary, a mortgagee, the court while recognizing the right of a third-party beneficiary to enforce a promise supported by consideration quoted with approval from 6 R.C.L. 886 as follows: " 'Even in jurisdictions which recognize the right of a beneficiary to enforce the contract, the agreement between the promisor and promisee must possess the necessary elements to make it a binding obligation—in other words, it must be a valid contract between the parties to enable a third person, for whose benefit the promise is made, to sue upon it. A mere naked promise from one to another for the benefit of a third will not sustain an action. Necessarily the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties, and the right to recover from the promisor is not absolute in all cases. The beneficiary is in fact asserting a derivative right. Therefore, among other limitations, the party to be benefited takes subject to all inherent equities arising out of the contract, as affecting the principal parties.' " 171 Tenn. 221, 101 S.W.2d 1109.

▆▆ At page 222 of 171 Tenn., at page 1109 of 101 S.W.2d, the court quoted from Restatement of the Law of Contracts, vol. 1, sec. 140, as follows: " 'There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or unenforceable at the time of its formation, or subsequently ceases to be binding in whole or in part because of impossibility, illegality or the present or prospective failure of the promisee to perform a return promise which was the consideration for the promisor's promise, the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitations.' "

At page 223 of 171 Tenn., at page 1110 of 101 S.W.2d the court quoted also from Dunning v. Leavitt, 85 N.Y. 30, as follows: " 'The party suing upon the promise * * * is in truth asserting a derivative right. * * * There is no justice in holding, that an action on such a promise is not subject to the equities between the original parties springing out of the transaction or contract between them.' "

The much cited case of Title Guaranty & Trust Co. v. Bushnell, 143 Tenn. 681, 228 S.W. 699, 12 A.L.R. 1512, does not contradict the principles stated above, for in that case the third-party beneficiary sued on an inter partes obligation supported by consideration, namely, retention of a part of the purchase price sufficient to pay off a mortgage note held by the third party. The deed in that case was made by a trustee of a second mortgage who, as grantor, was not personally obligated to pay off the other mortgage. The trustee acted in a representative capacity only, and the court did not look beyond him to determine the party in interest who occupied the position of promisee. Retention of sufficient money to pay off the mortgage was a consideration running to the promisor and was held sufficient to support his promise in favor of its beneficiary. The case is not authority for the view that a third-party beneficiary may enforce an unsupported promise to pay a debt that is non-existent as against the promisee.

▆▆ Had the Government brought an action against Johnstone to recover the amount of the tax, it is obvious that the action would have failed. Johnstone was not the taxpayer, he had not obligated himself

to pay the tax, and the land acquired by him from Inorganics was not burdened with any tax lien. Under the authorities above quoted, Spengler is entitled to assert the equities and defenses available to Johnstone in this action by the United States. The same defense, for reasons applicable to Spengler, prevails as to Duggan and Lakeside, also. With respect to the claim against the fund in the hands of the Recorder for the City of Knoxville, it is sufficient to state that when the City made its acquisition from Lakeside it acquired property that was likewise unburdened by any tax lien in favor of the United States. Hence, no basis exists for impressing a lien · upon that fund.

The result is that the action of plaintiff fails and should be dismissed as to all of the defendants, except Inorganics. Motion has heretofore been made by plaintiff for judgment by default against Inorganics. That motion should now be sustained.

Let the necessary orders be prepared.