CARRO MAY AUDIGIER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40402.   Promulgated February 8, 1954.

*Carl E. Dietze, C. P. A.*, for the petitioner.
*John E. Owens, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* Petitioner contends that the monthly payments received by her from the University of Tennessee during the years 1945, 1947, and 1948 were gifts from the university and therefore excludible from her gross income under section 22 (b) (3), Internal Revenue Code.[1]

Respondent denies that the payments were gifts and further contends that even if they were gifts they were gifts of "income from property" within the purview of the second and third sentences of section 22 (b) (3) and hence not to be excluded from gross income.

It is settled law that a gift is a voluntary transfer from one person to another person without any consideration or compensation therefor. *Noel* v. *Parrott*, 15 F. 2d 669; *C. B. Wilcox*, 27 B. T. A. 580. Equally well settled, at least for income tax purposes, is the proposition that a transfer will not be deemed a gift unless it is accompanied by an intent on the part of the transferor to make a gift. *Cooper* v. *Commissioner*, 197 F. 2d 951; *United States* v. *McCormick*, 67 F. 2d 867; *Weagant* v. *Bowers*, 57 F. 2d 679; *Beck-Brown Realty Co.*, 46 B. T. A. 1225; *Shell Employees' Benefit Fund*, 44 B. T. A. 452; *Acme Land & Fur Co.*, 31 B. T. A. 582, affd. 84 F. 2d 441; *Willis L.*

---

[1] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(3) GIFTS, BEQUESTS, DEVISES, AND INHERITANCES.—The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if, under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property;

*Garey*, 16 B. T. A. 274. Thus petitioner has the burden of proving both essential elements, i. e., absence of consideration and presence of donative intent. We do not think that she has sustained that burden.

It is stipulated that the payments to petitioner were made by the university in accordance with the terms of the contract, or lease agreement, of January 16, 1941. Under this contract, the university promised to pay petitioner for the rest of her life after the death of her husband one-half of the net rents from the business property leased for 99 years to Miller's, Inc. There was consideration for this promise if, at the instance of the promisor, either the promisor received some benefit or the promisee incurred some detriment. The preamble to the contract states that "* * * the Lessors desire to lease said premises to the Lessee for a term of ninety-nine (99) years in order that The University of Tennessee may be assured of a definite income during said term for the purpose of promoting and maintaining a Fine Arts Department * * *." Thus, on its face, the contract reveals an intention to benefit the university. Not only was the university assured of a steady income after the death of L. B. Audigier but it also had the option of selling the premises to the lessee at any time after the death of petitioner. Under the latter provision, the university could elect either to continue to receive as rent $6,000 per year, an 8 per cent return, or to sell the premises for the agreed purchase price of $75,000, whenever it should have the opportunity of making a more profitable investment. It is reasonable to infer, we think, that this provision was inserted at the behest of the university and we do not feel that any of the other parties to the contract stood to benefit from it as much as the university. It is improbable that Miller's, Inc., lessee, desired the inclusion of this provision which placed the lessee in the position of having to produce $75,000 within 2 months after the university, in its discretion, should elect to sell. To be sure, had the university not entered into the contract it would have had an unlimited right to dispose of the property upon the death of the life tenant, L. B. Audigier. But the fact remains that it became a party to the contract and received benefit thereby which we cannot find to be entirely unsolicited or unbargained for.

It will be noted that under the deed of September 15, 1932, L. B. Audigier retained a life interest in the property, together with the right to "* * * make lease or leases thereon for any term and upon any terms thought best by him * * *." This provision gave L. B. Audigier bargaining power vis-a-vis the university. He was under no obligation to execute the lease agreement. Furthermore, he could have negotiated, with or without the university's joinder, a lease, the terms of which might well have proved burdensome to the university upon his death. L. B. Audigier's action in signing the lease, which

constituted detriment,[2] removed this possibility and, in our opinion, formed at least part of the inducement for the university's promise. We, therefore, conclude that consideration for the university's promise to make the specified payments to petitioner was not lacking.

If there was consideration, the university was bound. We would assume that petitioner, either as a party to the contract or as a donee beneficiary of the contract, could enforce the university's promise to pay her one-half of the net rents for the rest of her life. *Title Guaranty & Trust Co.* v. *Bushnell*, 143 Tenn. 681, 228 S. W. 699; cf. *United States* v. *Inorganics, Inc.*, (E. D., Tenn.) 109 F. Supp. 576. Where there is an enforceable obligation, there is no gift. *Sutro* v. *United States*, (N. D., Calif., 1942) 13 A. F. T. R. 1618, 42-2 USTC ¶9523. Accordingly, the money received by petitioner was taxable as income to her. Cf. *Flarsheim* v. *United States*, 156 F. 2d 105.

Even were no consideration found for the university's promise, petitioner still cannot prevail without showing a donative intent in the university. *Weagant* v. *Bowers, supra.* This she has not done. Petitioner apparently contends that the 1934 resolution of the board of trustees is evidence of such intent. But since the resolution was passed in the form of an agreement and only after a request from petitioner's husband, the gesture, while generous, did not possess the spontaneity which is associated with most gifts. Furthermore, there is no evidence that any donative intent existed as late as 1943, the year in which the university first began making payments to the petitioner. It would be unreasonable to suppose that the university, after becoming a party to the contract of January 16, 1941, did not feel itself under a moral, if not a legal, obligation to pay over the agreed amounts to petitioner. A payor lacks the intent to make a gift if he is actuated chiefly by a sense of moral obligation. Cf. dissenting opinion in *Bogardus* v. *Helvering*, 88 F. 2d 646, 649, reversed *sub nom. Bogardus* v. *Commissioner*, 302 U. S. 34. Moreover, the fact that the university's payments were made in pursuance of a formal business transaction tends to negative the existence of the requisite donative intent. Cf. *Cooper* v. *Commissioner, supra; Mulqueen* v. *Commissioner*, 65 F. 2d 365; *Weagant* v. *Bowers, supra.* Thus we are not persuaded that the payments here meet the test for a gift as set forth in *Bass* v. *Hawley*, 62 F. 2d 721, 723, as follows:

That only is a gift which is purely such, not intended as a return of value or made because of any intent to repay another what is his due, but bestowed only because of personal affection or regard or pity, or from general motives of philanthropy or charity.

---

[2] "Detriment, * * * as used in testing the sufficiency of consideration means legal detriment as distinguished from detriment in fact. It means giving up something which immediately prior thereto the promisee was privileged to keep or doing or refraining from something which then he was privileged not to do or refrain from doing." 1 Williston on Contracts, sec. 102A.

Accordingly, we hold that the payments in question were taxable income and not gifts.

Having held that the payments here were not gifts, we do not find it necessary to discuss respondent's argument that the payments, if gifts, were gifts of "income from property" under section 22 (b) (3).

Petitioner's 1945 return was due March 15, 1946. Sec. 53 (a) (1), I. R. C. Petitioner filed her 1945 return August 7, 1950, and has offered no explanation for the delay. As a consequence she is liable for the addition to the tax as computed by respondent under section 291, Internal Revenue Code. We so hold.

The parties have stipulated that any adjustments to which the petitioner is entitled shall be determined under a Rule 50 computation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BRUCE, *J.*, dissenting: The question for decision is whether money received by petitioner from the University of Tennessee represented nontaxable gifts under section 22 (b) (3), Internal Revenue Code, or taxable income under section 22 (a). All the facts were stipulated and, therefore, no factual issue is presented. There is some dispute, however, as to the inferences which should be drawn from the stipulated facts.

The respondent contends, and the majority holds, that the amounts received by petitioner were not gifts because (1) there was an absence of donative intent, and (2) there was consideration. In my opinion the stipulated facts disclose both a presence of donative intent and a complete lack of consideration. Basically there are only two requisites for a valid gift, intent to make a gift and delivery. *Tyson* v. *Commissioner*, (C. A. 8) 146 F. 2d 50, 54. Consideration is important in that if the alleged gift is made in exchange for a consideration, there is no intent to make a gift.

The university's donative intent is found in the resolution passed by its board of trustees on December 27, 1934. On September 15, 1932, petitioner's late husband, L. B. Audigier, had entered into a binding contract with the university. L. B. Audigier had conveyed certain business property to the university, reserving to himself a life estate in said property, and in return the university had made various promises, including a promise to create, and erect a building for, a fine arts department which would be designated a memorial to L. B. Audigier's first wife, Eleanor Audigier. Thereafter, L. B. Audigier married petitioner. He found that, although he had provided for himself for life, he had made no provision for petitioner in the event she survived him. Upon being informed of these facts the sympathies of the board of trustees were aroused; and although the university

was under no legal or moral obligation to either L. B. Audigier or petitioner, as the property had been conveyed to it in return for a valid consideration, *Rice, Barton & Fales, Inc.* v. *Commissioner*, (C. A. 1) 41 F. 2d 339; *Jessie Chase*, 19 B. T. A. 1040, the board, on December 27, 1934, passed a resolution promising to turn over to petitioner in the event she survived her husband one-half the net income from the property for life. This promise was purely gratuitous and manifested a clear intent to make a gift. Even if the property had been a gift to the university, no obligation to return a portion of it would have arisen. *Gellatly* v. *Wetmore*, (C. A., D. C. Cir.) 177 F. 2d 73; certiorari denied 339 U. S. 905.

As the promise made by the trustees of the university was gratuitous, it was legally unenforceable. *Price* v. *Thomas*, 40 Tenn. 283; *Farrell* v. *Third National Bank*, 20 Tenn. App. 540, 101 S. W. 2d 158; *Fulmer* v. *Goldfarb*, 171 Tenn. 218, 101 S. W. 2d 1108; Williams' Tenn. Code Ann., sec. 7830; *McCarney* v. *Scott*, (C. A. 2) 146 F. 2d 624, 626; *Kilborn* v. *Pyne*, (C. A. 3) 279 F. 864. As a reputable institution, the university undoubtedly intended to complete the gift in the event petitioner survived her husband. There is no reason to assume that the university would require consideration for reaffirming its promise or before carrying out its expressed intention. Nevertheless, respondent contends that the university reaffirmed the promise in the lease of January 16, 1941, in return for a valuable consideration furnished by either petitioner or L. B. Audigier. The majority finds no consideration moving from petitioner. With this I agree. The majority holds, however, that the reaffirmation of the promise was supported by a consideration furnished by L. B. Audigier. With this I do not agree.

The lease of January 16, 1941, upon which both the majority and the respondent rely, does not purport to be or contain a bargain between the university and L. B. Audigier. It is a leasing agreement between the university and the Audigiers as lessors and Millers, Inc., as lessee. The university signed the lease as the remainderman. L. B. Audigier signed as the life tenant whose interest in the property terminated upon his death. Petitioner signed as the wife of the life tenant making the purely formal assertions required of her in that capacity. The lessors were contracting with Miller's, Inc., for rent and were not contracting among themselves. Had a binding contract between the university and the Audigiers been intended, the transaction would no doubt have taken the form of a triparty agreement. The statement in the preamble of the lease that the university should benefit thereby contains more sonority than significance. The preamble in no way indicates an intended bargain between the various lessors.

Nor does the lease purport to contain a bargained-for consideration

given in exchange for the promise in question. The university's reaffirmation in the lease of its promise or intent to make the gift was, like its resolution, purely gratuitous. The benefits received by the university were the right to receive rent as the remainderman after the death of the life tenant or the right to require the lessee to purchase the property at its option. These promises were made as a part of the bargain between Miller's, Inc., lessee, and the university, lessor of the remainder interest, in return for the right to occupy or purchase the remainder interest. These benefits were furnished by Miller's, Inc., not L. B. Audigier. Miller's, Inc., was interested only in obtaining a long-term lease from those who owned the legal title and were able to grant it, and not in benefiting petitioner, who had no interest in the property.

Respondent contends that under the law of Tennessee a written contract signed by the party to be bound is prima facie evidence of a consideration. Williams' Tenn. Code Ann.; sec. 7829. This rule merely creates a rebuttable presumption. *Cothron* v. *Cothron*, 21 Tenn. App. 388, 110 S. W. 2d 1054. In the instant case the presumption is overcome by the existence of a clear donative intent on the part of the university. Furthermore, the contract signed was the lease whereby the named lessors granted the lessee the use and occupancy of the leased property in return for the stated rentals payable by the lessee to L. B. Audigier during his lifetime and thereafter to the University of Tennessee. The promise in question was in no way a part of that contract, but was merely an extraneous expression of an intention to make a gift in the future found in the same writing.

Neither L. B. Audigier nor petitioner incurred a detriment or furnished a benefit at the request of the university in exchange for the promise. Cf. 1 Williston on Contracts, sec. 102. L. B. Audigier had no interest in the property to relinquish except a life estate which he continued to retain. Petitioner has never had any interest in the property, "neither a substance perfect, nor a substance inchoate." Promises made in the lease by L. B. Audigier and petitioner were made for the benefit of the lessee in order that L. B. Audigier might receive rent for life. They were not intended as consideration for the university's promise to turn over one-half its net income from the property to petitioner. As the life tenant, L. B. Audigier was entitled to the income from the property for life and nothing more. Under the lease he received all that was due him from Miller's, Inc. He received as rent $8,460 per year or 11.3 per cent of the stated value of the property. That he gave up no part of his right to income is evidenced by the fact that the rental he received was substantially greater than the rental to be received by the university upon the death of petitioner. Nothing in the lease purports to be, or was intended as, a consideration for the promise in question, and therefore no consideration existed.

The majority's holding that petitioner did not receive a gift seems to be based primarily upon its conclusion that she was a third-party donee beneficiary of a contract between the university and L. B. Audigier. I disagree with this conclusion as I find no consideration either to support a contract or to negative the intention to make a gift.

Only a bargained-for consideration will support a promise or contract and negative a gift. A mere incidental detriment, not intended as an ingredient for a bargain, will not. This is true even though the detriment is incurred at the instance of the promisor. 1 Williston on Contracts, sec. 101. Although a detriment incurred or benefit received would otherwise constitute a valid and sufficient consideration, it cannot be treated as a consideration unless it is bargained for and intended as such. In *United Fruit Co.* v. *United States*, (C. A. 1) 186 F. 2d 890, 895, the Court of Appeals said:

the performance by the government of such items of repair might well have been good consideration for the release. * * * But "nothing can be treated as a consideration that is not intended as such by the parties." *Fire Insurance Association* v. *Wickham, supra.* 141 U. S. [564] at page 579, 12 S. Ct. at page 88, 35 L. Ed. 860. The restoration work which was done here * * * was not "bargained for and given in exchange" for the release. Restatement, Contracts § 75.

This principle is particularly applicable to the law of gifts, for a benefit or detriment which is not bargained for or intended as a consideration does not negative the intent to make a gift. In *May Rogers*, 31 B. T. A. 994, the Board held, and rightly so, that where the value of transferred property is far greater than the value of that received in return, the difference in value represents a gift where a gift was intended. In other words, there is no bargained-for consideration to support the difference in value.

Petitioner was not a third-party donee beneficiary unless there existed with reference to the promise for her benefit a valid contract or bargain between the university and L. B. Audigier. *Farrell* v. *Third National Bank, supra; Fulmer* v. *Goldfarb, supra.* There was no contract with reference to the promise unless there was a bargained-for benefit or detriment intended as a consideration given in exchange for the promise. Cf. *United States* v. *Inorganics, Inc.*, (E. D., Tenn.) 109 F. Supp. 576. Also, in the absence of a bargained-for consideration, no consideration existed to negative the intention to make a gift.

As I have previously pointed out, the lease upon which the majority relies does not purport to be or to contain a bargain between L. B. Audigier and the university. It is a leasing agreement between the named lessors and Miller's, Inc., lessee. There is nothing which indicates that L. B. Audigier entered into the lease in order to secure a reaffirmation of the university's promise to turn over one-half of its net income from the property to petitioner. The preamble quoted in the majority opinion certainly does not disclose such an intention.

Nor is there anything in the lease which purports to be a bargained-for consideration, intended as such, furnished by L. B. Audigier in exchange for the promise in question. Miller's, Inc., not L. B. Audigier, furnished the benefits or promises received by the university under the lease. The promises to pay rent or purchase the premises were made as part of the university's bargain with Miller's, Inc., and in no way represent a bargain made by L. B. Audigier in return for the promise benefiting petitioner. A promisee cannot rely upon a consideration furnished as an ingredient for an unrelated bargain between the promisor and some third person.

The majority holds that by signing the lease L. B. Audigier incurred a detriment in that he gave up the right to enter into a lease reaching beyond his life which might have proved burdensome to the university upon his death. The majority finds this right in the words "to lease the same and to make lease or leases thereon for any term and upon any terms thought best by him." In my opinion these words are limited by the phrase "during the period of his natural life" found at the end of the sentence in which they are contained, and L. B. Audigier had no power to tie up the premises beyond his lifetime. The majority admits that "had the university not entered into the contract [lease] it would have had an unlimited right to dispose of the property upon the death of the life tenant, L. B. Audigier."

Respondent has not mentioned the possible existence of this right found by the majority, nor has he suggested that the relinquishment of this right was in any way intended as a consideration for the promise benefiting petitioner. Also, there is absolutely no indication that this right was even considered in connection with the lease, that either L. B. Audigier or the university thought such a right existed, or that it was bargained for and relinquished in exchange for the university's promise. Unless the relinquishment of this right was bargained for in exchange for the promise, it cannot be treated as a consideration. There is absolutely nothing to indicate that such a bargain occurred. The petitioner should not be forced to prove the nonexistence of every bargain imaginable, especially where the existence of the bargain is neither alleged nor indicated. In the absence of any indication of a bargain, the natural presumption should prevail that the university gratuitously reaffirmed its prior promise, or expression of intention, to make a gift of half its net income from the property to petitioner.

The majority advances additional reasons for denying the existence of an intent to make a gift. It asserts that no donative intent can be found in the 1934 resolution because it was solicited and, therefore, lacked spontaneity. If a solicited gift is not a gift, this Court has made a startling and unwarranted innovation in the law, as most gifts are solicited. Furthermore, it states that there is no evidence

that any donative intent existed as late as 1943, the year in which the university first began making payments to petitioner. An intent to make a gift was clearly expressed in the 1934 resolution. It is not necessary that the expression of intention be synchronous with the delivery, for if there could be no other purpose in the delivery than to effectuate the intention expressed in the past in anticipation of future delivery, the delivery completes the gift. *Culpepper* v. *Culpepper*, 18 Ga. App. 182, 89 S. E. 161; 38 C. J. S. 792. Here the only possible reason for the payments was to carry out the university's prior gratuitous promise or expression of intention to make a gift. That the university gratuitously reaffirmed this promise, or its intent to make a gift, in the lease contracted in the interim supports rather than detracts from the presumption that the intention to make a gift carried over to the time of delivery.

The majority also asserts that there was no gift because the university was morally obligated to carry out its promise to make the payments to petitioner. True, the university became morally obligated to make the payments when it promised to make the gift in its 1934 resolution. Every man has a moral duty to fulfill a promise once made, whether or not the promise is legally enforceable. 17 C. J. S. 421. The university did not increase its moral obligation by gratuitously reaffirming its promise in the lease. It was still a promise to make a gift and does not negative the existence of the donative intent.

Where a gratuitous transfer is made to fulfill a moral, although legally unenforceable, obligation to pay for something received, in some instances the courts have held that, as the payment was intended as compensation, it represents taxable income, rather than a gift, to the recipient. However, none of the cases hold or intimate that a moral obligation arising out of an expressed intent to make a gift converts the gratuitous transfer into taxable income. Cf. *Rice, Barton & Fales, Inc.* v. *Commissioner, supra, Bogardus* v. *Helvering*, 88 F. 2d 646, reversed sub nom. *Bogardus* v. *Commissioner*, 302 U. S. 34, cited by the majority, concerns the moral obligation of an employer to pay for services inadequately compensated in the past. Employee cases are in a class by themselves. As the majority opinion in the *Bogardus* case stated, in holding that "it would be compensation, though a gift," "We agree that a man may make a gift to an old employee without meaning it as 'compensation'; though probably such cases will be uncommon, especially if he declares that the payment is 'in recognition of' past services." Cf. *Carragan* v. *Commissioner*, (C. A. 2) 197 F. 2d 246, cited by the respondent. The payments to petitioner bore no similarity to a bonus paid to an old employee.

Furthermore, although the respondent has argued, in my opinion

fancifully, that the university was morally obligated to L. B. Audigier, the university was certainly under no conceivable moral obligation to petitioner. The payments to her were certainly gifts. Compare the statement found in the dissenting opinion (which is cited in the majority opinion in the instant case) in *Bogardus* v. *Helvering*, *supra*, at page 650, "One of the recipients was the sister of an employee who had lost his life in 1919. Certainly the payment to her was purely a gift * * *." See also *Jessie Chase*, *supra*, at page 1045, wherein the Board said:

Finally, there remains the vital point that the payment was made to Jessie Chase, the petitioner, rather than to the creditor [her deceased husband] or his estate. Jessie Chase had no privity or business relationship with the law school in any way. If anything could be needed to establish the voluntary nature of the transaction, it is this conclusive fact. Jessie Chase parted with no manner of consideration and the law school was under no obligation to her, legal or moral.

It is immaterial that the university's promise to make a gift was reaffirmed in the lease. That the lease was a formal legal document representing a business transaction did not make the promise enforceable. The court held in *In re Greene*, 45 F. 2d 428, 430:

A man may promise to make a gift to another, and may put the promise in the most solemn and formal document possible; but, barring exceptional cases, such, perhaps, as charitable subscriptions, the promise will not be enforced. The parties may shout consideration to the housetops, yet, unless consideration is actually present, there is not a legally enforceable contract.

Nor does the inclusion of the promise in the lease negative the existence of the donative intent where, as here, the promise is nothing more than a reaffirmation of a previous expression of that intent and in no way purports to be a part of a bargain. In *Weagant* v. *Bowers*, 57 F. 2d 679; *Mulqueen* v. *Commissioner*, 65 F. 2d 365; and *Cooper* v. *Commissioner*, 197 F. 2d 951, relied upon in the majority opinion, the promise was made as a part of a valid bargain between the promisor and promisee and constituted the intended consideration supporting the bargain. In none of the cases cited was the promise a reaffirmation of a previously expressed donative intent.

The majority held that the amounts received by petitioner were not gifts, and therefore found it unnecessary to discuss respondent's alternative contention that, even if the amounts received by petitioner were gifts, they were gifts "of income from property" which "shall not be excluded from gross income" under section 22 (b) (3) of the Internal Revenue Code. Having reached the conclusion that the payments were gifts, I find that I must consider respondent's contention and determine the nature of the subject matter of the gift. In the instant case this determination is governed by when the gift occurred.

There can be no gift without an "irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee." *Adolph Weil*, 31 B. T. A. 899, 906, affd. 82 F. 2d 561, certiorari

denied 299 U. S. 552; *Figuers* v. *Sherrell*, 181 Tenn. 87, 178 S. W. 2d 629, 632; *American National Bank* v. *Robinson*, 27 Tenn. App. 644, 184 S. W. 2d 393, 396. Here the promise by the university to turn over one-half of its net income from the property to petitioner, found in the resolution of December 27, 1934, and the lease of January 16, 1941, was gratuitous and legally unenforceable. *Farrell* v. *Third National Bank*, *supra; Fulmer* v. *Goldfarb*, *supra; Price* v. *Thomas*, 40 Tenn. 283. These promises did not represent an irrevocable transfer to petitioner of a right to one-half the income in the event she survived her husband. Consequently, there was no completed gift at either of those dates. Since the death of L. B. Audigier on September 17, 1943, the university has received the sum of $705 per month from Miller's, Inc., under the terms of the lease. Carrying out its previously expressed donative intent, the university has turned over to petitioner one-half of the net rents as promised. Each payment represented a separate gift, and the gift was the money actually received and accepted by petitioner.

Since *Irwin* v. *Gavit*, 268 U. S. 161, gifts of income have been interpreted as being taxable. This interpretation, which had become firmly established as a matter of construction, was written into section 22 (b) (3) by the Revenue Act of 1942 for the sake of clearness. But section 22 (b) (3) does not provide, nor have the courts held, that gifts *out* of income to the donor are taxable as income to the donee. In the instant case the full amount of the rents received by the university was income to the university. *Porter* v. *United States*, 52 F. 2d 1056. That, to carry out its previously expressed donative intent, it turned over one-half of the net rents to petitioner does not make the payments a gift "of income from property." Each payment to petitioner represented a gift of a sum certain at the time it was made and the entire amounts received in my opinion constitute nontaxable gifts under section 22 (b) (3) of the Code. Also, having reached the conclusion petitioner received no taxable income in 1945, I would hold there could be no penalty for failing to file a return for that year until 1950.